In re Williams, Appellee; Ohio State Medical Board, Appellant.

[Cite as In re Williams (1991), 60 Ohio St. 3d 85.]

(No. 90-1311—Submitted March 20, 1991—Decided June 5, 1991.)

*Lee I. Fisher,* attorney general, and *Steven P. Dlott,* for appellant.

*Thompson, Hine & Flory, Earle Jay Maiman* and *Louis F. Solimine,* for appellee.

H. BROWN, J. In an appeal from an administrative agency, a reviewing court is bound to uphold the agency's order if it is "* * * supported by reliable, probative, and substantial evidence and is in accordance with law. * * *" R.C. 119.12; see, also, *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 17 O.O. 3d 65, 407 N.E. 2d 1265. In the instant case, we must determine if the common pleas court erred by finding that the board's order was not supported by sufficient evidence. For the reasons which follow, we conclude that it did not and

affirm the judgment of the court below.

In its arguments to this court, the board contends that *Arlen* v. *Ohio State Medical Bd.* (1980), 61 Ohio St. 2d 168, 15 O.O. 3d 190, 399 N.E. 2d 1251, is dispositive. In *Arlen,* the physician was disciplined because he had written prescriptions for controlled substances to a person who the physician knew was redistributing the drugs to others, a practice prohibited by R.C. 3719.06(A). The physician appealed on the ground that the board failed to present expert testimony that such prescribing practices fell below a reasonable standard of care.

We held that the board is not required in every case to present expert testimony on the acceptable standard of medical practice before it can find that a physician's conduct falls below this standard. We noted that the usual purpose of expert testimony is to assist the trier of facts in understanding "issues that require scientific or specialized knowledge or experience beyond the scope of common occurrences. * * *" *Id.* at 173, 15 O.O. 3d at 193, 399 N.E. 2d at 1254. The board was then made up of ten (now twelve) persons, eight of whom are licensed physicians. *Id.;* R.C. 4731.01. Thus, a majority of board members are themselves experts in the medical field who already possess the specialized knowledge needed to determine the acceptable standard of general medical practice.

While the board need not, in every case, present expert testimony to support a charge against an accused physician, the charge must be supported by some reliable, probative and substantial evidence. It is here that the case against Dr. Williams fails, as it is very different from *Arlen.*

*Arlen* involved a physician who dispensed controlled substances in a manner which not only fell below the acceptable standard of medical practice, but also violated the applicable statute governing prescription and dispensing of these drugs. In contrast, Dr. Williams dispensed controlled substances in what was, at the time, a legally permitted manner, albeit one which was disfavored by many in the medical community. The only evidence in the record on this issue was the testimony of Dr. Williams's expert witnesses that his use of controlled substances in weight control programs did not fall below the acceptable standard of medical practice. While the board has broad discretion to resolve evidentiary conflicts, see *Conrad, supra,* at 111, 17 O.O. 3d at 67, 407 N.E. 2d at 1267, and determine the weight to be given expert testimony, *Arlen, supra,* at 174, 15 O.O. 3d at 194, 399 N.E. 2d at 1255, it cannot convert its own disagreement with an expert's opinion into affirmative evidence of a contrary proposition where the issue is one on which medical experts are divided and there is no statute or rule governing the situation.

It should be noted, however, that where the General Assembly has prohibited a particular medical practice by statute, or where the board has done so through its rulemaking authority, the existence of a body of expert opinion supporting that practice would not excuse a violation. Thus, if Dr. Williams had continued to prescribe Biphetamine or Obetrol for weight control after the promulgation of Ohio Adm. Code 4731-11-03(B), this would be a violation of R.C. 4731.22(B)(3), and the existence of the "minority" view supporting the use of these substances for weight control would provide him no defense. Under those facts, *Arlen, supra,* would be dispositive. Here, however, there is insufficient evidence, expert or otherwise, to support the charges against Dr. Williams. Were the board's deci-

sion to be affirmed on the facts in this record, it would mean that a doctor would have no access to meaningful review of the board's decision. The board, though a majority of its members have special knowledge, is not entitled to exercise such unbridled discretion.

Accordingly, we conclude that the court of common pleas properly found the board's order unsupported by reliable, probative, and substantial evidence, and we affirm the judgment of the court below.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

WRIGHT and RESNICK, JJ., dissent.

WRIGHT, J., dissenting. The message we send to the medical community's regulators with today's decision is one, I daresay, we would never countenance for their counterparts in the legal community. We are telling those charged with policing the medical profession that their expertise as to what constitutes the acceptable standard of medical practice is not enough to overcome the assertion that challenged conduct does not violate a state statute. In the process, we are weakening the rule of *Arlen* v. *Ohio State Medical Bd.* (1980), 61 Ohio St. 2d 168, 15 O.O. 3d 190, 399 N.E. 2d 1251. To say the least, this is most unfortunate.

The majority acknowledges that the issue is whether Dr. Williams's practice of long-term use of Schedule II drugs departed from acceptable standards. There was no allegation that the practice was illegal — just improper. To distinguish *Arlen* on the grounds that that case involved violation of a statute is to introduce an irrelevant issue. The focus of *Arlen* was not whether the doctor had violated a statute, but whether his conduct "* * * failed to conform to a minimum standard of care." *Id.* at 174, 15 O.O. 3d at 194, 399 N.E. 2d at 1255. The majority makes a slight bow in the direction of *Arlen's* holding by granting that the Ohio State Medical Board "has broad discretion to resolve evidentiary conflicts," but promptly adopts a rule that vitiates that selfsame measure of discretion. The majority asserts, without citation to any authority, that the board "cannot convert its own disagreement with an expert's opinion into affirmative evidence of a contrary proposition where the issue is one on which medical experts are divided and there is no statute governing the situation." The majority contends that the "only" evidence on this issue in this case came from Dr. Williams's experts. This simply overlooks the fact that the parties stipulated to Dr. Williams's practice of long-term drug therapy as part of a weight control treatment regimen. Further, Dr. Williams's experts merely testified to the "split" within the medical community as to the subject practice. They certainly were not testifying as to matters outside the competence of the experts on the medical board or, for that matter, to a practice that we know is counterproductive. And that was the point made by *Arlen*: the board does not need experts to tell it what constitutes acceptable medical practice.

The majority contends that, absent *some* testimony from someone or the violation of a statute, the medical board is not to exercise its "unbridled discretion" in deciding cases. I would contend, given the majority's reasoning, that the medical board is left with no discretion at all. Thus, I must respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.