OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.  The
advance sheets to Ohio St.3d will also contain the volume and
page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

State Medical Board of Ohio, Appellant and Cross-Appellee, v.
Murray, Appellee and Cross-Appellant.
[Cite as State Med. Bd. of Ohio v. Murray (1993),        Ohio
St.3d        .]
Administrative procedure -- Procedure for adoption, amendment or
     rescission of rules -- R.C. 119.03(E), applied.
Pursuant to R.C. 119.03(E), an agency must inform those affected
     by the adoption of a rule prior to its effective date by
     means which are reasonably calculated to inform such
     individuals, but the agency is not required to give public
     notice of the rule's adoption.
     (No. 92-557 -- Submitted March 10, 1993 -- Decided June 23,
1993.)
     Appeal from the Court of Appeals for Franklin County, No.
91AP-519.
     By letter dated February 8, 1989, appellee and cross-
appellant, Richard D. Murray, M.D., a plastic and reconstructive
surgeon ("Murray"), was notified that appellant and
cross-appellee, State Medical Board of Ohio ("the board"),
intended to determine what type of disciplinary action should be
taken against him for violations of Ohio Adm.Code 4731-11-05 and
R.C. 4731.22(B)(2), (3), and (6).  The board's letter stated that
during the period beginning January 1982, and continuing until at
least October 1988, Murray "* * * prescribed and/or administered
androgens and/or anabolic steroids to patients * * * for purposes
of enhancing the patients' athletic ability and not for medical
purposes."  The board further alleged that Murray failed to use
reasonable care discrimination in the administration of drugs;
sold, prescribed, gave away, or administered drugs for other than
legal or legitimate therapeutic purposes; and departed from or
failed to conform to, minimal standards of care for similar
practitioners under the same or similar circumstances regardless
of whether actual injury to a patient had been established.
     Pursuant to Murray's request, a hearing on the matter was
held August 14, 1989.  Based on the evidence presented to her,
the board's hearing examiner prepared a written report, including
findings of fact and conclusions of law, concluding that Murray
violated Ohio Adm.Code 4731-11-05 and R.C. 4731.22(B)(2), (3),

and (6).  The examiner recommended that Murray's certificate to practice medicine and surgery be revoked.

On October 11, 1989, after considering the hearing examiner's report and recommendation, and Murray's written objections, the board adopted the report and recommendation.  On October 13, 1989, the board entered an order revoking Murray's certificate to practice medicine and surgery in Ohio.  From this decision, Murray filed a notice of appeal in the Franklin County Court of Common Pleas.

On April 25, 1991, the court of common pleas affirmed the board's order.  On May 2, 1991, Murray filed a notice of appeal in the Franklin County Court of Appeals.

On January 17, 1992, the court of appeals reversed the judgment of the court of common pleas, holding that the board failed to comply with R.C. 119.03(E) in adopting Ohio Adm.Code 4731-11-05, thereby invalidating that rule, and found that the board's determination that Murray violated Ohio Adm.Code 4731-11-05 was not supported by reliable, probative, and substantial evidence.  Without discussion, the court summarily overruled six of Murray's other seven assignments of error, determining that because Ohio Adm.Code 4731-11-05 was invalid, there was no basis for filing a disciplinary action against Murray and that further board actions based on the invalid rule were harmless errors.  The court of appeals also overruled Murray's argument that R.C. 119.12 is unconstitutional.

The cause is now before this court pursuant to the allowance of a motion and cross-motion to certify the record.

Lee I. Fisher, Attorney General, and Odella Lampkin, Assistant Attorney General, for appellant and cross-appellee.

Pfau, Pfau & Pfau and William E. Pfau III, for appellee and cross-appellant.

Alice Robie Resnick, J.  The instant case involves an appeal and cross-appeal that propound two separate but interrelated questions for our consideration.  First, we are asked to decide whether the court of appeals was correct in holding that Ohio Adm.Code 4731-11-05 was invalid.  In determining the cross-appeal, we are asked to decide whether the evidence presented established violations of R.C. 4731.22(B)(2), (3), and (6),1 and/or Ohio Adm.Code 4731-11-05.2

Finding Ohio Adm.Code 4731-11-05 invalid, the court of appeals held that the board failed to give reasonable notice of the adoption of the rule prior to its February 1, 1988 effective date.  The court concluded that such failure invalidated the rule pursuant to R.C. 119.02.3

Procedures for the adoption, amendment, or rescission of agency rules are set forth in R.C. 119.03.  Of particular importance in this case are R.C. 119.03(A), (C), (D), and (E).

In relevant part, R.C. 119.03(A) provides that an agency must give "[r]easonable public notice" at least thirty days in advance of the date set for a public hearing on the proposed rule.  The notice must include:  "(1)  A statement of the agency's intention to consider adopting, amending, or rescinding a rule; (2) A synopsis of the proposed rule, amendment, or rule to be rescinded or a general statement of the subject matter to which the proposed rule, amendment, or rescission relates; (3) A

statement of the reason or purpose for adopting, amending, or rescinding the rule; (4) The date, time, and place of a hearing on the proposed action, which shall be not earlier than thirty nor later than fifty days after the proposed rule, amendment or rescission is filed under division (B) of this section.  In addition to public notice, the agency may give whatever other notice it considers necessary. * * *"

In accordance with the directive of R.C. 119.03(A)(4), the board promulgated Ohio Adm.Code 4731-2-01.  Ohio Adm.Code 4731-2-01(A) provides that public notice shall be given by advertising in one generally circulated newspaper in the cities of Akron, Cleveland, Columbus, Cincinnati, Dayton, Toledo, and Youngstown.  Subparagraph (B) of this rule also requires that the board maintain a list of persons who have previously requested copies of its public notices and that copies of the notices be mailed to all such persons and to anyone else requesting copies thereof.

It is undisputed that the board complied with the prehearing public notice requirements of R.C. 119.03(A).  Of importance in this case, the notice was mailed to the Mahoning County Medical Society of which Murray is a member and was published in Murray's local newspaper, the Youngstown Vindicator.

In accordance with R.C. 119.03(C) a public hearing was conducted December 2, 1987.  R.C. 119.03(C) provides that " * * * any person affected by the proposed action of the agency may appear and be heard * * * [and] may present his positions arguments, or contentions, orally or in writing, * * * and present evidence tending to show that the proposed rule, * * * if adopted * * *, will be unreasonable or unlawful."  A transcript of the public hearing indicates that several persons offered opinions in support of the adoption of Ohio Adm.Code 4731-11-05. Murray did not appear at the hearing nor was any material submitted by Murray or on his behalf.  At its regular January 1988 meeting, the board voted unanimously to adopt Ohio Adm.Code 4731-11-05 and set an effective date of February 1, 1988.  See R.C. 119.03(D).

The board's next step in the validation process is set forth in R.C. 119.03(E) and Ohio Adm.Code 4731-2-02.  R.C. 119.03(E) provides:  "Prior to the effective date of a rule, amendment, or rescission, the agency shall make a reasonable effort to inform those affected by the rule, amendment, or rescission and to have available for distribution to those requesting it the full text of the rule as adopted or as amended."  (Emphasis added.)  Ohio Adm.Code 4731-2-02 is essentially identical to R.C. 119.03(E) and further states:  "The method of notification may include, but is not limited to, mailing a notice of the action to all persons whose name appears on the mailing list maintained by the board pursuant to paragraph (B) of rule 4731-2-01 of the Administrative Code, or to any person or his attorney who provided evidence, oral testimony, and/or a written statement of his position, arguments, or contentions concerning the proposed rule, amendment, or rescission which were made part of the record of the public hearing held pursuant to section 119.03 of the Revised Code."

As set forth above, the board was required to make a "reasonable effort" to inform those affected by the adoption of the rule prior to its effective date.  It is not disputed that

the board sent notice of the rule's adoption to the persons and organizations on its mailing list, including the Youngstown Vindicator and the Mahoning County Medical Society.

The court of appeals concluded that the board's actions, in toto, did not constitute a "reasonable effort to inform * * *" pursuant to R.C. 119.03(E).  We disagree.

The appellate court correctly determined that as a matter of interpretation, R.C. 119.03(E) should be read in pari materia with the other sections of that statute.  However, we are not convinced that the court considered the board's compliance with the other sections in making its determination that the board's efforts under R.C. 119.03(E) were not sufficient.

We find it significant that a general statement of the proposed rule's subject matter, i.e., "Use of Drugs to Enhance Athletic Ability," was published in the Youngstown Vindicator on October 29, 1987 under the heading "PUBLIC NOTICE."  The published notice further stated:  "The PURPOSE of proposed Rule OAC 4731-11-05 is to establish standards prohibiting the use of anabolic steroids, growth hormones, testosterone or its analogs, human chorionic gonadotropine (HCG), or other hormones for the purpose of enhancing athletic ability."

Approximately thirty days after publication, a public hearing was held during which the proposed rule, as published, was discussed and analyzed.  The hearing was, pursuant to R.C. 119.03(C), open to any person affected by the proposed action.  Subsequent to the hearing, the board adopted the rule and announced its effective date.  The only prevalidation condition remaining was that prior to February 1, 1988, the board was required to make a "reasonable effort to inform those affected by the rule * * *" of its adoption.  R.C. 119.03(E).

In the instant case, we find that the board's efforts to inform those affected were "reasonable."  In contrast to the prehearing mandate set forth in R.C. 119.03(A)(1) and Ohio Adm.Code 4731-2-01, the board was not required to give public notice of the rule's adoption.  Further, in contrast to the plain language of Ohio Adm.Code 4731-2-01, there is no publication requirement in R.C. 119.03(E).  The board also provided its licensees with the knowledge that its methods of notification might "* * * include, but [are] not limited to, mailing a notice of the action to all persons whose name appears on the mailing list * * *" or who provided evidence at the public hearing.  Ohio Adm.Code 4731-2-02.

While we recognize that Murray's name is not on the board's mailing list, we are also cognizant of the fact that notice of the public hearing was published and Murray could have participated in the adoption process and/or requested additional information on the proposed rule.  In addition, it is important that as a board-certified physician and surgeon in the state of Ohio, Murray's medical practice is governed by R.C. Chapter 4731 as well as the rules promulgated by the board in Ohio Adm.Code Chapter 4731.

Quite simply, we are unwilling to analogize the behavior of one who feigned ignorance or chose to be conveniently unaware of a rule to that of someone who was genuinely uninformed due to someone else's mistake or oversight.  Notwithstanding any of Murray's other arguments, e.g., shortly after the effective date, he asked the board for a copy of the rule and allegedly never

received it and/or he received a copy of a board publication containing the rule but did not see the relevant article, we find that the board's efforts were reasonably calculated to inform those affected by the rule's adoption; therefore, we reverse the court of appeals in part and hold that Ohio Adm.Code 4731-11-05 is valid.

Murray has set forth six arguments in his cross-appeal. First, he argues that the decision to revoke his license was not supported by reliable, probative, and substantial evidence, asserting that his practice of prescribing medications prior to February 1, 1988 was in a legally permitted manner. Murray further argues that there was no evidence supporting the board's conclusion that his conduct was below acceptable standards.

Facts adduced at the hearing showed that at least as early as 1982, Murray prescribed anabolic steriods, androgens, and HCG to approximately two hundred patients solely for the purpose of enhancing their athletic ability. Complete records for twenty of Murray's patients were introduced into evidence. Testimony regarding the records indicated that little or no medical histories were obtained prior to Murray's prescribing anabolic steroids. Murray stated that the lack of medical histories could be explained by his practice of not recording a history unless the patient reported past health problems. No laboratory tests were obtained for any of the patients. The evidence also showed that patients were not scheduled for follow-up appointments and further revealed that, in 1985, Murray prescribed steriods to a patient even though he had reason to suspect that the patient was selling the drugs.

The results of a medical study introduced into evidence by Murray indicated that some of the more serious health risks associated with steroid usage were more likely to occur if the usage continued for a period longer than six months. Certain of the patient records showed that Murray repeatedly wrote prescriptions allowing his patients' steriod use to continue for periods of much longer than six months.

The standard of review for a decision of the board is set forth in R.C. 119.12: "The court may affirm the order of the agency * * * if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Murray's argument focuses on the establishment of an accepted standard of care against which his practices could be evaluated. He asserts that prior to the effective date of Ohio Adm.Code 4731-11-05, no medical standards regarding steriod use existed; therefore, in the absence of expert medical testimony, his alleged failure to meet minimal standards of care was not supported by substantial, probative evidence.

Murray also appears to ignore the fact that the board is composed primarily of experienced health professionals. The legislature and the courts of Ohio have delegated comprehensive decision-making power to the board. Such power includes, but is not limited to, the authority to rely on the board's own knowledge when making a decision rather than looking to the record for the opinion of an expert.

It is well established that "* * * expert testimony as to a standard of practice is not mandatory in a license revocation

hearing and the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care." Arlen v. State (1980), 61 Ohio St.2d 168, 172, 15 O.O.3d 190, 193, 399 N.E.2d 1251, 1254. "* * * [A] requirement [of] expert testimony in the record of a license revocation proceeding usurps the power of the State Medical Board's broad measure of discretion. * * *" Id. at 174, 15 O.O.3d at 194, 399 N.E.2d at 1255.

Murray argues that Arlen is not applicable to this case because it was decided prior to the employment of hearing examiners. This argument is not pursuasive.

The record indicates that the board reviewed the evidence presented at the hearing as well as the examiner's findings and recommendations. Consequently, we find that it was the board's decision, acting independently of the hearing examiner, to revoke Murray's license. In reaching its decision, the board was aided by a hearing transcript, exhibits, and the examiner's report. The board applied its professional judgment to the material presented and reached a conclusion fully supported by the evidence.

In arguing the inapplicability of Arlen, Murray urges us to follow In re Williams (1991), 60 Ohio St.3d 85, 573 N.E.2d 638. We find Williams to be factually distinguishable from the case before us. In Williams, the accused doctor presented expert testimony that his decisions to prescribe controlled substances in a weight control program were within accepted medical standards. Id. at 87, 573 N.E.2d at 640. This court determined that the board apparently disagreed with the doctor's expert and "* * * convert[ed] its own disagreement * * * into affirmative evidence of a contrary proposition where the issue is one on which medical experts are divided and there is no statute or rule governing the situation." Id. In contrast, Murray did not present expert testimony supporting his contention that his actions were within acceptable guidelines.

Murray attempts to convince this court that because the standard of practice announced in Ohio Adm.Code 4731-11-05 did not become effective until February 1, 1988, the board was required under the law announced in Williams to present expert testimony regarding the acceptable standard of care governing activities prior to the rule's effective date. The Williams opinion does not set forth such a requirement.

In Williams, this court stated: "While the board need not, in every case, present expert testimony to support a charge against an accused physician, the charge must be supported by some reliable, probative and substantial evidence." Id. at 87, 573 N.E.2d at 640. The Williams court found that the board's case failed due to a lack of evidence, not because the board failed to present expert testimony. On the contrary, in its case against Murray, the board presented an extensive compilation of documentation, exhibits, and testimony that, in our opinion, constituted reliable, probative and substantial evidence supporting its charges. Accordingly, we find that the lack of expert testimony regarding a standard of care does not in any way preclude a conclusion that the board's findings were supported by reliable, probative, and substantial evidence and that its order is in accordance with law.

In his second argument, Murray asserts that the board

improperly precluded him from conducting depositions prior to this hearing. By letter dated April 14, 1989, Murray requested that the board issue three subpoenas duces tecum. The board responded negatively to Murray's request, stating in a letter dated May 4, 1989, that: "Neither Chapter 119. nor the Board's procedures permit the taking of discovery depositions."

R.C. 119.09 provides comprehensive regulations for the conduct of adjudication hearings. At the time of Murray's hearing, this section provided, in relevant part: "For the purpose of conducting any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may require the attendance of such witnesses and the production of such books, records, and papers as it desires, and it may take the depositions of witnesses residing within or without the state in the same manner as is prescribed by law for the taking of depositions in civil actions in the court of common pleas, and for that purpose the agency may, and upon the request of any party receiving notice of said hearing as required by section 119.07 of the Revised Code, shall, issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers, directed to the sheriff of the county where such witness resides or is found, which shall be served and returned in the same matter as a subpoena in a criminal case is served and returned. * * *"

In Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143, 555 N.E.2d 630, paragraph one of the syllabus, this court held: "The mandatory language of R.C. 119.09 pertains to securing attendance of witnesses and production of books, records, or papers at the request of a party for the purpose of conducting an adjudication hearing; it does not provide for prehearing discovery depositions by a party to an adjudication hearing." Murray argues that Frantz is inapplicable because his letter did not request "prehearing discovery depositions," asserting that he simply asked for "depositions."

Regardless of whether the depositions were described as "prehearing discovery depositions" or "depositions," there is no question but that they were to be conducted on May 8, 1989, prior to the hearing. Clearly, any such depositions would have been pre-hearing and, therefore, not permitted by R.C. Chapter 119.

Murray's third argument focuses on the confidentiality of board records. Murray asserts that pursuant to his request for the production of board records, the hearing examiner should have viewed the records in camera and determined which portions were confidential or subject to the physician-patient privilege.

The board's power to investigate evidence that suggests a violation of R.C. Chapter 4731 or a board rule is found in R.C. 4731.22(C)(1). In relevant part, R.C. 4731.22(C)(1) provides: "Information received by the board pursuant to an investigation shall be confidential and not subject to discovery in a civil action."

Murray asserts that notwithstanding this clear legislative directive, the hearing examiner and/or the common pleas court should have viewed the board's evidence in camera and released to Murray that which was not confidential. We find such an argument to directly contravene the statute, i.e., information received by the board during an investigation is confidential.

Murray also argues that the phrase "* * * and not subject to

discovery in any civil action * * *," as used in R.C. 4731.22(C)(1), is merely a definition or an explanation of the word "confidential." On the contrary, we find that the phrase depicts a separate and distinct characteristic of the information received by the board. In other words, such information is to be kept confidential at all times and is not, under any circumstances, including the issuance of a protective order, discoverable in a civil action.

Murray's fourth argument focuses on his motion to orally address the board. Murray asserts that he was misadvised by the board in its September 14, 1989 letter and was not aware that the examiner's report would be considered at the board's meeting on October 11-12, 1989.

The board's September 14, 1989 letter to Murray stated that any written objections to the report filed by Murray would "* * * be considered by the State Medical Board at its October 11-12, 1989 meeting, before approving, modifying, or disapproving the Recommendation."

The letter also stated: "No oral presentation will be permitted at the time the Board considers the Report and Recommendation except for purposes of addressing matters which could not have been presented at hearing or in written objections. Motions to orally address the Board must be made in writing within ten (10) days of receipt of the Report and Recommendation, and must explain why such matters would not have been previously addressed. The Office of the Attorney General will be permitted to respond to any oral presentation."

The minutes of the October 11, 1989 meeting indicate that the board members were advised that Murray had submitted a motion to orally address the board. The Chair asked for a motion to approve Murray's request; however, at that time, the board was advised that neither Murray nor his attorney was present. Accordingly, Murray's request to address the board became moot.

We find Murray's arguments opposing well-established board procedures to be without merit. The board's September 14, 1989 letter clearly advised Murray that the examiner's recommendation would be considered at the October 11-12, 1989 meeting along with any objections thereto. The board fulfilled its statutory obligations to Murray. He was informed of his option to request an opportunity to address the board. The September 14, 1989 letter was complete with a telephone number for the board, an address, and was signed by a case control officer. Any further communication regarding the meeting was Murray's responsibility. His failure to determine the time and/or location of the meeting does not constitute grounds for invalidating the board's approval of the examiner's recommendation.

In his fifth argument, Murray asserts that he should have been allowed to cross-examine the attorney hearing examiner for the purpose of obtaining evidence that would have proved that the examiner was not competent to determine the appropriate standard of care to be applied in this case.

The attorney hearing examiner was designated by the board pursuant to R.C. 4731.23, R.C. Chapter 119, and Ohio Adm.Code Chapter 4731-13. The examiner is delegated by the board "* * * to conduct any hearing which the medical board is empowered to hold or undertake pursuant to Chapter 119. of the Revised Code. Such hearing examiner shall hear and consider the oral and

documented evidence introduced by the parties and issue in writing proposed findings of fact and conclusions of law to the board for their consideration within thirty days following the close of the hearing."  R.C. 4731.23(A).  The authority and duties of the examiner are fully set forth in Ohio Adm.Code 4731-13-03.  Such duties clearly establish that the examiner is a trier of fact and not a party to the adjudicatory process.

In accordance with R.C. 119.12, the common pleas court was "* * * confined to the record as certified to it by the agency." Further, "[u]nless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."  Id.  Based on the mandate of Ohio Adm.Code 4731-13-23(D), the record transmitted to the common pleas court could not have contained evidence obtained by cross-examining the hearing examiner.  This section provides: "The presiding attorney hearing examiner, because of his duties, shall not be a competent witness nor subject to deposition in any adjudication proceeding.  Unless the testimony of a board member or an attorney hearing examiner is material to the factual allegations set forth in the notice of opportunity for hearing, board members and an attorney hearing examiner shall not be competent witnesses nor subject to deposition in any adjudication proceeding.  Evidence from other persons relating to the mental processes of the presiding attorney hearing examiner or board members shall not be admissible."  Further, the only additional evidence that is admissible at the common pleas level is evidence that is newly discovered and not reasonably ascertainable prior to the adjudication hearing.  Quite clearly, there is no provision in the law for the admissibility of evidence concerning the attorney hearing examiner's level of expertise regarding the appropriate standard of care.

In his final argument, Murray asserts that the board's decision to revoke his license to practice medicine and surgery was arbitrary and unreasonable.  Pursuant to R.C. 4731.22, the board may, upon finding certain specified circumstances, revoke or suspend a certificate.  Such decision may be affirmed by the court if it finds that the order is supported by reliable, probative, and substantial evidence and is in accordance with law.  R.C. 119.12.

As previously set forth, we hold that the board's order was supported by reliable, probative, and substantial evidence.  We further find that the penalty imposed by the board was in accordance with law and, therefore, such order will not be reversed or modified.

For the reasons set forth above, the judgment of the court of appeals is affirmed as to its ruling on the arguments set forth in the cross-appeal and reversed as to its holding on the validity of Ohio Adm.Code 4731-11-05; accordingly, the judgment of the common pleas court is reinstated.

Judgment accordingly.

Moyer, C.J., A.W. Sweeney, Douglas, Wright and F.E. Sweeney, JJ., concur.

Pfeifer, J., concurs separately.

FOOTNOTES:

1   R.C. 4731.22(B)(2), (3), and (6) provide:  "The board * * * shall * * * revoke, or suspend a certificate * * * for one or more of the following reasons:

"* * *

"(2)  Failure to use reasonable care discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;

"(3)  Selling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes or a plea of guilty to, or a judicial finding of guilt of, a violation of any federal or state law regulating the possession, distribution, or use of any drug;

"* * *

"(6)  A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]"

2   Ohio Adm.Code 4731-11-05 provides:

"(A)  A physician shall not utilize anabolic steroids, growth hormones, testosterone or its analogs, human chorionic gonadotropin (HCG), or other hormones for the purpose of enhancing athletic ability.

"(B)  A physician shall complete and maintain patient medical records which accurately reflect the utilization of any substance described in this rule.  Patient medical records shall indicate the diagnosis and purpose for which the substance or drug is utilized, and any additional information upon which the diagnosis is based.

"(C)  A violation of any provision of this rule, as determined by the board, shall constitute 'failure to use reasonable care discrimination in the administration of drugs,' as that clause is used in division (B) (2) of section 4731.22 of the Revised Code; and 'a departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established,' as that clause is used in division (B)(6) of section 4731.22 of the Revised Code.  A violation of paragraph (A) of this rule shall further constitute 'selling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes,' as that clause is used in division (B)(3) of section 4731.22 of the Revised Code."

3   R.C. 119.02 provides:  "Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule."

Pfeifer, J., concurring.   While there is an overwhelming amount of evidence that Dr. Murray violated the standard of care owed to his patients,  I am concerned that the State Medical Board has discretion under R.C. Chapter 119 to revoke or suspend doctors' licenses through a trial by ambush.  During my short tenure on this court, I have seen repeated occasions where the State Medical Board has attempted to provide accused doctors with

as little due process as possible by continuously denying defendants' requests for information, interrogatories, and depositions.  On future occasions, I will be less likely to uphold medical board decisions revoking or suspending licenses when the accused doctor has not been permitted to conduct elementary discovery procedures.

This court and the General Assembly should consider whether administrative bodies, such as the State Medical Board, should be permitted to deny discovery requests on a whim, or whether a more exacting due process standard should be enacted.