OPINION.
This is a complex case involving the interplay among the Public Records Act,[1] the confidentiality provisions of the State Medical Board of Ohio, and similar, but not identical, provisions governing the State Department of Insurance.[2]
With sparse precedent to guide us, we have attempted to negotiate the rather tortuous path created by these provisions — a path made all the more Byzantine by the strange facts of this case.
Relator-appellant Alvin Wallace is a surgical assistant and the president of relator-appellant Surgical Skills, Inc., a business that provides surgical assistants to hospitals. In 1995, Richard A. Wilson, an investigator for Anthem Blue Cross and Blue Shield, began an investigation of the billing practices of Wallace and Surgical Skills.
Wilson's investigation coincided with an investigation by respondent-appellee State Medical Board of Ohio (Medical Board), which was looking into allegations that Wallace and Surgical Skills were engaged in the unauthorized practice of medicine. The investigation also coincided with one by respondent-appellee State Department of Insurance (Insurance Department), which was investigating Wallace for alleged insurance fraud. Both the Medical Board and the Insurance Department conducted interviews of various witnesses as part of their investigations. At several of these interviews, some of which were conducted jointly by the Medical Board and the Insurance Department, Wilson was also present.
In May 1996, Wallace and Surgical Skills (collectively, Wallace) filed a mandamus action in the Hamilton County Court of Common Pleas, seeking the records of the Medical Board's and the Insurance Department's investigations. Wallace claimed that he was entitled to these records under the Public Records Act, R.C.149.43 et seq. In response, the Medical Board and the Insurance Department moved for summary judgment. They argued that the records were confidential and not required to be released. The trial court agreed with the Medical Board and the Insurance Department and granted their motion for summary judgment.
Wallace now appeals. He asserts five assignments of error.
 I. Confidentiality of Investigatory Records
In his first assignment, Wallace asserts that the court erred in holding that the Medical Board's and the Insurance Department's records were confidential. He argues that the Public Records Act required the release of the records and that any confidentiality was waived when the Medical Board and the Insurance Department permitted Wilson to be present during their interviews. At the very least, Wallace argues, the trial court should have conducted an in camera review of the records to determine which parts were confidential and which parts could be released.
R.C. 149.43 provides that all "public records" shall be made available for inspection upon request.[3] "Public record" means "any record that is kept by any public office," which would include the Medical Board and the Insurance Department.[4]
But the definition excludes certain records, including records whose release is prohibited by state law.[5] To determine if the Medical Board's and the Insurance Department's records should have been released, we must turn to other sections of the Revised Code.
 A. Medical Board's Records
R.C. 4731.22 is the relevant statute that governs the records of the Medical Board. That statute provides that "[i]nformation received by the board pursuant to an investigation is confidential and not subject to discovery in any civil action."[6] Courts interpreting R.C. 4731.22 have held that the statute provides a confidentiality privilege for the Medical Board's investigatory records.[7] The courts have explained that the privilege does not belong to the Medical Board. Rather, it belongs to several groups whose privacy rights are implicated: "investigation witnesses, patients, physicians under investigations, and any other person whose confidentiality right is implicated by a board investigation."[8] For the privilege to be waived, there must be a waiver by all persons who have privacy rights. The Medical Board's actions alone cannot create a waiver. Until all relevant parties have waived their privileges, the information in the records must remain confidential, and the court is not required to do an in camera inspection.[9]
We follow the case law and conclude that R.C. 4731.22
provides a privilege for information in the Medical Board's investigatory records. Without a valid waiver from all persons whose privacy rights are implicated, these records may not be disclosed under the Public Records Act. Here, when the Medical Board allowed Wilson, a private third party, to be present during interviews, it gave Wilson access to information that should have been confidential. For information gathered when Wilson was present, we hold that the Medical Board violated its duty to keep that information confidential. The Medical Board no longer has privacy rights in that information. We also hold that one of the doctors who was interviewed, Dr. John Semertzides, waived his confidentiality privilege because he signed a form that authorized the release of all information gathered during his interview. Finally, we note that Wallace, the person under investigation, had a privacy interest in the records. But because Wallace wants to obtain the records, his privacy rights are not at issue.
For the Medical Board's records pertaining to all interviews except Dr. Semertzides's, we hold that those records should remain confidential. Although the Medical Board may have violated its duty to keep that information confidential, there is no evidence that any other parties waived their confidentiality privileges. Thus, those records are not subject to disclosure, and the trial court is not required to do an in camera inspection of them.
For the records that Dr. Semertzides authorized to be released, we cannot tell from the record exactly whose privacy rights were implicated. We remand this case to the trial court to conduct an in camera inspection. The court shall release records that pertain to the Medical Board and Dr. Semertizides. But the court shall redact information pertaining to anyone else whose privacy rights are implicated, such as patients.
 B. Insurance Department's Records
Concerning the Insurance Department's records, R.C. 3901.44
is the relevant statute. In terms of whether the Insurance Department's records are public records, R.C. 3901.44's language differs from that of R.C. 4731.22. R.C. 3901.44 states:
 All papers documents, reports, and evidence in the possession of the superintendent [of insurance] or the superintendent's designee that pertain to an insurance fraud investigation are confidential law enforcement investigatory records under section 149.43 of the Revised Code.[10]
We have been unable to find any relevant case law or other materials interpreting R.C. 3901.44. So we must follow the plain language of the statute.
Regarding the statute's reference to the Insurance Department's records being "confidential law enforcement investigatory records under section 149.43," we turn to R.C.149.43 to determine exactly what is meant. R.C. 149.43 provides that confidential law enforcement investigatory records are not subject to disclosure under the Public Records Act.[11]
Confidential law enforcement investigatory records are defined as ones that pertain "to a law enforcement matter of a criminal, quasi-criminal, civil or administrative nature."[12] The definition, though, is limited. Specifically, it includes only records whose release "would create a high probability of disclosure" of certain information. That information is:
 (a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
 (b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;
 (c) Specific confidential investigatory techniques or procedures or specific investigatory work product;
 (d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.[13]
When a public body, such as the Insurance Department, asserts that records are not subject to disclosure because they are confidential law enforcement investigatory records, a court "must make an individualized scrutiny of the records in question" if the person requesting the records challenges the public body's assertion.[14] The best way for the court to scrutinize the records is to conduct an in camera inspection.[15] Only by scrutinizing the records can the court adequately determine which records contain information that falls under any of the above four categories.
Here, when the Insurance Department asserted that its records were not subject to disclosure, the court erred by accepting that assertion without looking at the records. We hold that the court had a duty to conduct an in camera inspection to determine if the records "would create a high probability of disclosure" of the information listed in any of the above four categories. Thus, we remand this case for the trial court to conduct an in camera
inspection. If the records do not create a high probability of disclosure of any information in the four categories, the court shall order the records to be released. If a record partially contains confidential information, the court shall release that record with the confidential information redacted.
 II. Ultra Vires
In Wallace's second assignment, he argues that the Medical Board's and the Insurance Department's investigations of him were not legitimate. Essentially, Wallace claims that the Medical Board and the Insurance Department were not conducting their own independent investigations of him. Rather, Wallace argues, they were merely helping Wilson conduct his investigation for Anthem. He points out that Robert Kaising, the Insurance Department's investigator, referred to Wilson as the "point man." According to Wallace, the Medical Board and the Insurance Department were only investigating "contractual relationships," which was not permitted under the law. Wallace asserts that the Medical Board's and the Insurance Department's records should be released in their entirety because the investigations were ultra vires, or "performed without any authority to act on the subject."[16]
We disagree.
The Medical Board has the authority to investigate "evidence that appears to show that a person has violated any provision" of Chapter 4731 of the Revised Code, which governs physicians and limited practitioners.[17] One section of Chapter 4731 prevents the unauthorized practice of medicine.[18] Here, the Medical Board was investigating allegations that Wallace was engaged in the unauthorized practice of medicine. As part of that investigation, the Medical Board may have looked at Wallace's contractual relationship with Anthem. But the evidence in the record shows that the investigation of the contractual relationship was merely done in the context of the broader investigation of the allegations of the unauthorized practice of medicine. There is no evidence that shows that the purpose of the Medical Board's investigation was merely to help Anthem in its private dispute with Wallace.
As for the Insurance Department's investigation, the Insurance Department has broad power to investigate alleged insurance fraud.[19] We have found no evidence to suggest that the Insurance Department was looking into anything other than insurance fraud when it investigated Wallace. Besides Kaising's reference to Wilson being a "point man" — an isolated, ambiguous reference without any context — there is no evidence in the record to even suggest that the purpose of the Insurance Department's investigation was merely to help Anthem in its private dispute with Wallace. In fact, Kaising explained in his deposition that Wilson was present because he brought to the investigations a general expertise of health insurance as well as a specific knowledge of Anthem. Also, the record reveals that the Insurance Department began its investigation before Anthem began its investigation.
Therefore, we hold that neither the Medical Board's investigation nor the Insurance Department's investigation was ultra vires. No genuine issues of material fact remain to be litigated in this respect.[20] We reject Wallace's second assignment.
 III. Other Assignments/Constitutional Issues
In Wallace's third assignment, he asserts that the court erred by treating the Medical Board's and the Insurance Department's records in the same way and by not taking into consideration the different statutes that govern these entities. Because we have accounted for the different statutes in the first assignment, the third assignment is now moot.
In Wallace's fourth assignment, he asserts that the trial court's failure to conduct an in camera review of the Medical Board's and the Insurance Department's records violated the constitutional principle of separation of powers. He argues that there should have been some judicial review, in the form of an incamera review, when the two entities declared their records to be confidential. Basically, he asserts that any determination by governmental entities that records are confidential must be subject to judicial review, a proposition that has validity.
Here, though, we have already held that the trial court must conduct an in camera review of the Insurance Department's records and of the Medical Board's records pertaining to Dr. Semertzides's interview. Thus, the fourth assignment is moot for those records. As for the Medical Board's remaining records, Wallace has already had two opportunities for judicial review of the Medical Board's denial of his request for those records: first in his mandamus action in the trial court, and now on appeal. The trial court and this court have had the opportunity to review the language of R.C.4731.22. We have determined that the Medical Board's records are confidential and that parties besides the Medical Board hold the privilege provided under R.C. 4731.22. Because the relevant parties have not waived their privileges, the information in the records is entirely confidential, and an in camera review would serve no purpose.[21] Thus, we overrule Wallace's fourth assignment.
In Wallace's fifth assignment, he asserts that his equal-protection rights were violated when the Medical Board and the Insurance Department denied him access to their records. He argues that, by allowing Wilson to be present at interviews, the Medical Board and the Insurance Department favored Wilson over him. In his words, the Medical Board's and the Insurance Department's actions created "an unconstitutional preference or separate class of persons."
Under the Equal Protection Clause in the United States and Ohio Constitutions,[22] if government action does not involve a suspect class of persons or a fundamental right, then the action will be upheld unless it is shown that the action is not rationally related to a legitimate government interest.[23]
That rational-basis test applies here. First, Wallace is not a member of a suspect class, which generally involves race, national origin, religion, or sex.[24] Second, the Medical Board's and the Insurance Department's refusal to release their reports does not involve a fundamental right, as there is no fundamental right for an individual to receive confidential material.
Applying the rational-basis test, we hold that there was no equal-protection violation. The governmental interests involved here were the Medical Board's interest in preventing the unauthorized practice of medicine and the Insurance Department's interest in preventing insurance fraud. Considering that the Revised Code grants the Medical Board broad power to investigate the unauthorized practice of medicine and the Insurance Department broad investigatory powers for insurance fraud, we hold that the governmental interests were legitimate.
We also conclude that Wilson's presence at the witness interviews was rationally related to the Medical Board's and the Insurance Department's interests. As we have already explained, there is no evidence in the record that the Medical Board and the Insurance Department allowed Wilson to be present because they were merely helping him investigate Wallace. Rather, the evidence in the record shows that Wilson was present because he brought to the investigations a general expertise of health insurance and a specific expertise of Anthem. In other words, the evidence shows that Wilson's purpose was to aid the Medical Board and the Insurance Department in their investigations, a rational reason for having Wilson present. Thus, Wilson's fifth assignment is overruled.
 IV. Conclusion
We reverse the trial court's judgment in part and remand this case for further proceedings in accordance with our disposition of the first assignment. We note that Wallace has requested us to order witnesses deposed by him to answer certain questions that they refused to answer in their depositions. But the purpose of those depositions was to gather information to help determine the ultimate issue of whether the Medical Board's and the Insurance Department's records should be released. Because we have already made a determination regarding those records, we conclude that the issue of deposition testimony is moot. If the trial court believes that further deposition testimony will aid its in camera
inspections, the trial court may issue appropriate orders. We also note that Wallace has requested in his appellate brief that we award him reasonable attorney fees. We decline to do so because Wallace has yet to establish a proper basis for such an award.[25]
 Judgment affirmed in part and reversed in part, andcause remanded.
 Sundermann and Winkler, JJ., concur.
Please Note:
The court recorded its own entry on the date of the release of this Opinion.
[1] R.C. 149.43 et seq.
[2] R.C. 4731.22(F)(5) and R.C. 3901.44(B), respectively.
[3] R.C. 149.43(B).
[4] See R.C. 149.43(A)(1).
[5] R.C. 149.43(A)(1)(p). When Wallace filed his mandamus action, the relevant language was codified under R.C.149.43(A)(1), which did not then have lettered subsections.
[6] R.C. 4731.22(F)(5) (codified under R.C. 4731.22[C][1] when Wallace filed his mandamus action).
[7] State Med. Bd. of Ohio v. Murray(1993), 66 Ohio St.3d 527,535-536, 613 N.E.2d 636, 642-643; Degordon v. Ohio State Med. Bd.
(1992), 62 Ohio Misc.2d 584, 585-586, 609 N.E.2d 247, 248.
[8] In re Kralik(1995), 101 Ohio App.3d 232, 236,655 N.E.2d 273, 275.
[9] Id.; Degordon, supra, at 586, 609 N.E.2d at 248 (holding that a court is not required to conduct an in camera inspection where the matters are entirely confidential); Kremer v. Cox
(1996), 114 Ohio App.3d 41, 54, 682 N.E.2d 1006, 1014-1015.
[10] R.C. 3901.44(B). When Wallace filed his mandamus action, the relevant language, which was slightly different, was codified under R.C. 3901.44(A).
[11] R.C. 149.43(A)(1)(h) (codified under R.C. 149.43[A][1] when Wallace filed his mandamus action).
[12] R.C. 149.43(A)(2).
[13] Id.
[14] State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland
(1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph four of the syllabus.
[15] State ex rel. Clark v. Toledo(1992), 62 Ohio St.3d 452,453, 584 N.E.2d 662, 663.
[16] Black's Law Dictionary (6 Ed.Abridged 1991) 1057.
[17] See R.C. 4731.22(F)(1) (codified under R.C. 4731.22[C][1] when Wallace filed his mandamus action).
[18] R.C. 4731.41(practice of medicine or surgery without certificate).
[19] See, generally, R.C. 3901.04.
[20] See Civ.R. 56(C).
[21] See Degordon, supra, at 586, 609 N.E.2d at 248 (holding that a court is not required to conduct an in camera inspection where the matters are entirely confidential).
[22] Section 1, Fourteenth Amendment to the United States Constitution; Section 2, Article I, Ohio Constitution.
[23] Adamsky v. Buckeye Local School Dist.(1995), 73 Ohio St.3d 360,362, 653 N.E.2d 212, 214.
[24] Id.
[25] R.C. 149.43(C)