JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, CVS/Pharmacy #3131 ("CVS"), appeals the decision of the Cuyahoga County Court of Common Pleas which held that the Ohio State Pharmacy Board's ("Board") findings were supported by reliable, probative, and substantial evidence. For the reasons stated below, we affirm.
 I. {¶ 2} The material facts deduced at the administrative hearing are largely not in dispute. On March 8, 2000, the pharmacist scheduled to work at CVS failed to report. The CVS manager, Michael J. Kolpien ("Kolpien"), opened the store at 9:00 a.m. under the mistaken belief that the scheduled pharmacist was simply running late.[1] During this time, the pharmacy area remained closed.
 {¶ 3} One of the store's first customers approached the pharmacy area and accidentally set off the ADT audible alarm system.[2]
Kolpien, a manager for less than two months[3], began to panic and opened a sealed envelope that contained the codes for the alarm system.[4]
He then contacted the CVS pharmacist scheduler and district manager, leaving voice-mail messages with both. At the same time, a second customer approached the pharmacy area to obtain his blood pressure medication. Upon seeing the area was closed, the customer became irrate and screamed that he would pass out without his medication. Kolpien placed a cash drawer in the pharmacy's register and told the pharmacy technician, Debbie Evilsizer ("Evilsizer"), to remain at the pharmacy and explain to customers that CVS was waiting for the pharmacist to arrive. Upon Kolpien's further instruction, Evilsizer sold the customer his blood pressure medication.
 {¶ 4} At approximately 10:00 a.m., Kolpien learned of the circumstances regarding the pharmacist's absence and that the CVS scheduler was attempting to locate a fill-in pharmacist. Meanwhile, Evilsizer continued to sell prescriptions to customers at the pharmacy. Between the hours of 10:00 a.m. and 12:00 p.m., a total of ten customers recovered previously-prepared prescriptions, obtaining 16 different medications. During this time, no new orders were taken and no prescriptions were filled.
 {¶ 5} After investigating the events that took place, CVS disciplined Kolpien through a written reprimand and placed him on probation.[5] John Yaskanich, R.Ph., a pharmacist who previously worked at CVS and who left the alarm codes where a manager could access them, received a similar written reprimand and probation. Evilsizer was placed on administrative leave from March 8, 2000 through March 20, 2000, pending CVS' investigation.
 {¶ 6} On March 12, 2001, the Board issued a notice of opportunity for hearing, alleging five violations of law or regulations arising out of the events on March 8, 2000. On April 3, 2001, CVS requested a hearing on the charges pursuant to R.C. 119. CVS also included a proposed settlement, including payment of a fine and proposed corrective action, on two of the five violations. These settlement proposals were rejected and a hearing took place on January 7, 2002. On January 11, 2002, the Board rendered three conclusions of law, finding CVS violated sections of O.A.C. 4729-5-22, O.A.C. 4729-5-11, and R.C. 4729.57, and permanently revoked CVS store's license.
 {¶ 7} On January 25, 2002, CVS appealed this decision to the Cuyahoga County Court of Common Pleas, pursuant to R.C. 119.12. CVS attempted to supplement the administrative record with the publicly-reported minutes of Board meetings from 2000 and 2001, which was denied. On November 19, 2002, the court, having denied CVS' motion to supplement the record, issued its ruling finding that the Board's decision was supported by reliable, probative, and substantial evidence.
 {¶ 8} CVS timely filed this appeal and advances four assignments of error for review.
 II. {¶ 9} The trial court shall uphold the decision of the administrative agency if that decision is supported by reliable, probative, and substantial evidence, and is in accordance with law. StateMedical Bd. of Ohio v. Murray (1993), 66 Ohio St.3d 527. The trial court "must give due deference to the administrative resolution of evidentiary conflicts" and must not substitute its judgment for that of the administrative agency. Hawkins v. Marion Corr. Inst. (1990),62 Ohio App.3d 863.
 {¶ 10} An appellate court's role is to determine whether the trial court abused its discretion in reaching its determination. Pons v. OhioState Medical Board (1993), 66 Ohio St.3d 619. An abuse of discretion implies more than an error of law or judgment. It suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Absent a clear abuse of that discretion, the lower court's decision should not be reversed.Mobberly v. Hendricks (1994) 98 Ohio App.3d 839.
 {¶ 11} When reviewing a professional agency's order, a court must accord due deference to the agency's interpretation of the technical and ethical requirements of its profession. Linden Med. Pharm. v. Ohio StateBd. of Pharm. (2001), Franklin County App. No. 00AP-641. An appellate court does have plenary review of purely legal questions. ElbirehEmpire, Inc. v. Ohio Liquor Control Commission, et al., 2003-Ohio-2484.
 III. {¶ 12} In its first assignment of error, CVS argues that the "trial court erred in finding that the Board's order was in accordance with the law." Specifically, CVS argues that the trial court erred by affirming the Board's decision finding that: (A) CVS violated the patient counseling requirements of O.A.C. 4729-5-22; (B) the inventory requirements of O.A.C. 4729-5-11(C)(2); and (C) the qualifications of being a terminal distributor under O.A.C. 4729.57. For the reasons stated below, we affirm the decision of the trial court.
A. The counseling requirements of O.A.C. 4729-5-22.
 {¶ 13} The Board found that CVS violated O.A.C. 4729-5-22, as there were no pharmacists available to offer or perform counseling or to record the customer's refusal of counseling. O.A.C. 4729-5-22 reads in part:
"(A) A pharmacist or the pharmacist's designee shall personally offer to counsel the patient or caregiver whenever any prescriptions, new or refill, are dispensed. In this situation, when counseling is refused, the pharmacist shall ensure that such refusal is documented in the presence of the patient or the patient's care-giver. If the patient or caregiver is not physically present, the offer to counsel shall be made by telephone or in writing on a separate document and shall accompany the prescription."
This is known as patient counseling.
 {¶ 14} CVS contends that, absent a customer's acceptance of the offer for patient counseling, the pharmacist need not actually perform the counseling. O.A.C. 4729-5-22(E). Thus, once the customers refused counseling, CVS was under no further obligation. It is the position of CVS that the Board, and the trial court, misinterpreted O.A.C. 4729-5-22
as a matter of law.
 {¶ 15} The Board argues that since there was no pharmacist on duty, the technician could not have been the "pharmacist's designee." Also, the offer of counseling could be performed by a designee, not the actual counseling itself. Thus, even assuming Evilsizer was the pharmacist's designee, she would not have been in a position to counsel customers.
 {¶ 16} There is no dispute that Evilsizer offered counseling to the customers and each refused. Even assuming the technician was the pharmacist's designee, and the first part of the regulation was satisfied, CVS failed to satisfy the second sentence of the regulation. The regulation reads that "* * * when counseling is refused, the pharmacist shall ensure that such refusal is documented in the presence of the patient * * *." The regulation does not provide that the pharmacist or designee shall document the refusal.[6]
 {¶ 17} The Board found that CVS was in violation of O.A.C.4729-5-22, in part, because a pharmacist was not available to document the customers' refusals to patient counseling. The decision of the Board was in accordance with the law and it cannot be said that the trial court abused its discretion by affirming this decision.
B. Inventory requirements of O.A.C. 4729-5-11(C)(2).
 {¶ 18} The Board found that CVS violated O.A.C. 4729-5-11(C)(2), which sets forth certain inventory requirements. Specifically, O.A.C.4729-5-11 reads, in part:
"(C) If there is a change in the responsible pharmacist, the state board of pharmacy shall be notified on a board approved form within thirty days thereof of the effective date of the change and the name of the new responsible pharmacist.
"(2) A complete inventory * * * shall be taken of the controlled substances on hand at the pharmacy with the new responsible pharmacist. The new pharmacist shall be responsible for completing and maintaining this inventory record at the site of the terminal distributor of dangerous drugs."
 {¶ 19} CVS argues that this complete inventory should occur some time after the new responsible pharmacist[7] has assumed his or her responsibility.[8] The Board argues that once CVS' prior responsible pharmacist, Brian Rose ("Rose"), left his employment on January 31, 2000, CVS was in violation of the law until March 9, 2000, when Pamela McIntrye ("McIntyre") assumed Rose's former position.
 {¶ 20} We find the trial court did not abuse its discretion by affirming the Board's decision. Pursuant to O.A.C. 4729-5-11, once a responsible pharmacist is replaced, the pharmacy has 30 days from the effective date of the change to notify the Board. In the case sub judice, Rose left CVS effective January 31, 2000. Therefore, CVS had thirty days to notify the Board of the replacement and to conduct a complete inventory. CVS' argument that the inventory must take place only after the new responsible pharmacist begins working is without merit.
 {¶ 21} The regulation anticipates that when one responsible pharmacist leaves, another pharmacist will immediately be assigned. This should be clear, as the law requires a responsible pharmacist be present at all times. R.C. 4929.55(B) states that, "A pharmacist * * * will maintain supervision and control over the possession and custody of dangerous drugs that may be acquired by or on behalf of the applicant."
 {¶ 22} Under CVS' logic, a pharmacy could lose the services of its responsible pharmacist and then not replace him or her for six months. Then, on the seventh month, an inventory would take place. This result is illogical. The Board found that CVS should have had a replacement for Rose before he left and the failure to do so was a violation. There was reliable, probative, and substantial evidence upon which the court had to rely. The trial court did not abuse its discretion.
 C. Qualifications for being a terminal distributor under R.C. 4729.55. {¶ 23} The Board found CVS failed to meet the qualifications of a terminal distributor of dangerous drugs as provided by 4729.57(A)(7). Specifically, the Board found that CVS failed to:
"[s]atisfy the qualifications of a terminal distributor of dangerousdrugs set forth in Section 4729.55 of the Ohio Revised Code, to wit: apharmacist did not maintain supervision and control over the possessionand custody of the dangerous drugs; and adequate safeguards were notassured to prevent the sale or distribution of dangerous drugs by personsother that a pharmacist or licensed health professional authorized toprescribe drugs."[9]
 {¶ 24} CVS argues that these requirements must be accessed through collective business practices, not individual moments in time. Specifically, CVS argues that it is insufficient to conclude that, because the events of March 8, 2000 occurred, CVS lacked adequate safeguards.
 {¶ 25} CVS focuses much of its argument on an "inexperienced and panicked store manager" whose errors of judgment "foiled" its established safeguards. Such an argument is meritless. "Although a licensee may find his permit imperiled by a careless or unauthorized act of an employee, the validity of such regulation lies in the nature of the item being regulated." Linden Med. Pharm., supra. Also, Kolpien's experience as a CVS assistant manager discredits CVS' contention that he was hopelessly inexperienced.
 {¶ 26} The trial court's ruling did not amount to an abuse of discretion. There was reliable, probative, and substantial evidence in which the trial court had to rely.
 {¶ 27} For the foregoing reasons, CVS' first assignment of error is overruled in its entirety.
 IV. {¶ 28} In its second assignment of error, CVS argues that the "permanent revocation of CVS' license is contrary to law, unconstitutional and an abuse of discretion." For the reasons stated below, we affirm the decision of the trial court.
 {¶ 29} CVS argues that the Board wielded its discretion arbitrarily and capriciously by imposing the most severe penalty. R.C.4729.57(A) provides that:
"The state board of pharmacy may suspend, revoke, or refuse to renew, any license issued to a terminal distributor of dangerous drugs pursuant to section 4729.54 of the Revised Code, or may impose a monetary penalty or forfeiture * * *."
 {¶ 30} It is well established that a reviewing court may not substitute its judgment for an order that is supported by reliable, probative and substantial evidence. Jaffa Food Market, Inc. v. LiquorControl Comm. (October 1, 1998), Cuyahoga App. No. 74449. Likewise, an authorized sanction that is supported by reliable, probative, and substantial evidence, will not be overturned. Belcher v. Ohio StateRacing Commission, 2003-Ohio-2187.
 {¶ 31} We find that the trial court did not abuse its discretion as it was well within the purview of authorized sanctions for the Board to revoke CVS' license. "When a penalty is within the scope of authority granted to an agency, courts may not substitute its judgment for that of the agency and modify the imposed penalty." Bartley v. State of Ohio,Dept. of Commerce, Div. of State Fire Marshal, 2002-Ohio-3592.
 {¶ 32} CVS' second assignment of error is overruled.
 V. {¶ 33} In its third assignment of error, CVS argues that the "trial court erred in denying CVS' motion to supplement the record." For the reasons stated below, we affirm.
 {¶ 34} On May 24, 2002, CVS motioned the trial court to supplement the record with nine exhibits containing excerpts from the official minutes of Board meetings held in 2000 and 2001. Each excerpt dealt with the Board's previous enforcement actions against terminal distributor licensees. On August 19, 2002, CVS' motion was denied.
 {¶ 35} Pursuant to R.C. 119.12, the trial court "may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." Otherwise, the court is confined to the record as certified to it by the agency.
 {¶ 36} Newly discovered evidence refers to that in existence at the time of the administrative hearing but which was incapable of discovery by due diligence. Frazier v. Ohio State Bd. of Educ. (December 16, 1999), Cuyahoga App. No. 75042, citing Benefit Plans Agency, Inc. v.Duryee (1995), 101 Ohio App.3d 495. Such evidence, however, does not refer to newly created evidence. The moving party has the burden of demonstrating: (1) that the evidence was actually newly discovered; that is, it must have been discovered subsequent to the trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result. Id.
 {¶ 37} CVS argues that the minutes from these prior adjudications could not have been ascertained prior to the hearing because the issues addressed by the evidence only became ripe after the hearing. To hold otherwise, it is argued, would require all licensees appearing in an adjudication hearing, as a precautionary measure, to introduce all of the past enforcement actions taken by the Board. We disagree.
 {¶ 38} The trial court did not abuse its discretion by denying CVS' motion to supplement the record. The evidence CVS sought to introduce was not newly discovered. CVS has not demonstrated that they were unable to obtain these records prior to the hearing. Also, the trial court could have determined that such evidence was merely for the purpose of impeaching the Board's decision. Nothing would suggest that such evidence would have altered the outcome of the hearing. Lastly, CVS has provided no authority for the position that an administrative board is bound by prior decisions under a doctrine stare decisis.
 {¶ 39} Appellant's third assignment of error is overruled.
 VI. {¶ 40} In its fourth assignment of error, CVS argues that the "trial court erred in finding that CVS received a meaningful opportunity to be heard and that CVS received due process at the Board." For the reasons stated below, we affirm the decision of the trial court.
 {¶ 41} In support of its assignment of error, CVS presents four arguments. CVS argues, the Board: (1) failed to provide reasons for its action and apparent rejection of CVS' arguments; (2) offered no evidence or witnesses to rebut CVS' evidence; (3) imposed an excessively harsh punishment; and (4) failed to account for the conduct of other licensees. These arguments are without merit.
 {¶ 42} CVS was not deprived of its due process rights. CVS was given the opportunity to be heard, as evidenced by CVS' three witnesses and 16 exhibits entered on its behalf. CVS failed to establish that the Board was obligated to affirmatively present evidence and witnesses in opposition to CVS' arguments. The Board weighs the evidence presented by the state and respondent and renders a decision. CVS points to no law that states the Board must provide a detailed evaluation of the facts and its conclusions of law.
 {¶ 43} Appellant's fourth assignment of error is overruled.
Judgment affirmed.
MICHAEL J. CORRIGAN P.J., and ANNE L. KILBANE, J., CONCUR
[1] It was later learned that the scheduled pharmacist failed to report to work because his mother suffered a heart attack the night before.
[2] The ADT alarm system is loud and disruptive. ADT required a pharmacist's authorization to turn off the alarm remotely. Pursuant to CVS' policies and procedures, Kolpien should have cleared and secured the store and waited for deactivation of the alarm.
[3] Kolpien, although a manager for less than two months, had been a CVS assistant manager for approximately three-and-one-half years at a different CVS location.
[4] These codes are to be used by pharmacists only.
[5] Probation is a final warning. Any further violation of CVS policy by him or an employee under his supervision results in an automatic termination of employment.
[6] James Reye ("Reye"), a compliance agent for the Board, who witnessed the events on March 8, 2000, testified that when he confronted Kolpien and Evilsizer, each stated that no prescriptions had been dispensed. When Reye asked to see the signature log to verify that no prescriptions had been dispensed, they were unable to locate it. Reye later learned, and Kolpien and Evilsizer acknowledged, that they had hidden the log from Reye.
[7] Pursuant to R.C. 4729.27, a "responsible pharmacist" is one who is in "full and actual charge of the pharmacy."
[8] CVS concedes the fact that they had a 35 day period between responsible pharmacists between January 1, 2000 and March 8, 2000, and although they always had a pharmacist present, they were unable to identify an individual willing to accept the duty of responsible pharmacist.
[9] Record of proceedings, paragraph 2. See also, R.C.4729.55(B),(C).