[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 431.]

THE STATE EX REL. WALLACE ET AL., APPELLEES, *v.* STATE MEDICAL BOARD OF OHIO ET AL., APPELLANTS.

[Cite as *State ex rel. Wallace v. State Med. Bd. of Ohio*, 2000-Ohio-213.]

*Public records—State Medical Board of Ohio's investigative records are not public records—Waiver of right to confidentiality—Determining whether State Department of Insurance fraud investigatory records are exempt from disclosure under R.C. 149.43(A)(2).*

(No. 99-1385—Submitted April 11, 2000—Decided August 16, 2000.)

APPEAL from the Court of Appeals for Hamilton County, No. C-980557.

_____

{¶ 1} Relator-appellee Alvin Wallace is a surgical assistant and president of relator-appellee Surgical Skills, Inc., a business that provides hospitals with surgical assistants. Surgical assistants perform tasks such as preparing and laying out the necessary surgical instruments.

{¶ 2} In 1994, respondent-appellant State Medical Board of Ohio and respondent-appellant State Department of Insurance began independent investigations of the relators.

{¶ 3} On September 7, 1994, Patricia Ellis, an investigator employed by the Medical Board, began investigating relators for alleged violations of R.C. Chapter 4731, including the unlicensed practice of medicine.

{¶ 4} In January 1995, Richard Wilson, an investigator employed by Anthem Blue Cross and Blue Shield ("Anthem"), began investigating insurance claims submitted to Anthem by the relators.

{¶ 5} Also in January 1995, Robert J. Kaising, an investigator with the Insurance Department, was assigned to investigate a complaint, made by a third-party payor other than Anthem, that alleged that relators were committing insurance

fraud. In June 1995, Kaising learned that Anthem was also conducting an investigation of the relators.

{¶ 6} Wilson's investigation commenced after Anthem received a communication from the National Health Care Anti-Fraud Association. The communication was authored by FBI agent Cynthia Cronin and stated that the relators were suspected of submitting fraudulent claims to insurance companies. The concern was that the relators, surgical assistants, were using billing codes employed by the medical profession to bill insurance companies for services rendered by surgeons.

{¶ 7} The scope of Wilson's investigation was limited to determining whether Wallace was a physician and whether services that relators provided to Anthem subscribers were reimbursable, as Anthem's administrative guidelines did not allow services performed by nonphysician surgical assistants to be reimbursed. In the beginning of April or May 1995, Wilson, believing that he was under a duty to do so, contacted the Insurance Department to discuss information he had gathered regarding the relators. At that time, he also contacted the Medical Board.

{¶ 8} During their investigations, Wilson was present on several occasions when Ellis and Kaising interviewed physicians and when they inquired about arrangements between the relators and medical providers.

{¶ 9} In December 1995, relators contacted the Medical Board and Insurance Department and requested permission to inspect and copy all of the documents these agencies had in their possession relating to Wallace and Surgical Skills, Inc. These requests were made pursuant to the Public Records Act, R.C. 149.43 *et seq.* The Medical Board and Insurance Department refused to release their investigatory records to the relators.

{¶ 10} In May 1996, relators filed a mandamus action in the Hamilton County Court of Common Pleas to compel the respondents to release their investigatory records relating to relators under R.C. 149.43. Respondents, the

Medical Board and Insurance Department, claimed that the records were confidential and exempted from release under R.C. 149.43. On June 3, 1998, the trial court granted respondents' motion for summary judgment.

{¶ 11} Relators appealed, asserting five assignments of error. On June 11, 1999, the Court of Appeals for Hamilton County reversed the trial court's judgment in part and remanded the case to the trial court for further proceedings in accordance with its disposition of the case.

{¶ 12} The court of appeals determined that by allowing Wilson to be present during witness interviews the Medical Board violated the duty to keep its investigatory records confidential; however, the court concluded, "R.C. 4731.22 provides a privilege for information in the Medical Board's investigatory records. Without a valid waiver from all persons whose privacy rights are implicated, these records may not be disclosed under the Public Records Act." The court further noted that Dr. Semertzides, one of the physicians who was interviewed in Wilson's presence, authorized the release of all information gathered during his interview. With regard to this information, the court of appeals directed the trial court to conduct an *in camera* inspection and withhold any information that implicated the privacy rights of anyone other than Semertzides. Additionally, the court of appeals concluded that the trial court had a duty to conduct an *in camera* inspection of the Insurance Department's records in order to ascertain whether the information contained therein was exempted from release.

{¶ 13} In addressing relators' other assignments of error, the court held that the investigations conducted by the Medical Board and the Insurance Department were legitimate and therefore not ultra vires and that the denial of records did not violate Wallace's equal protection rights.

{¶ 14} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Robert Armand Perez, Sr.,* for appellees.

*Betty D. Montgomery,* Attorney General, *Scott Myers* and *Lisa Wu Fate,* Assistant Attorneys General, and *Mark R. Weaver*, Special Counsel to the Attorney General, for appellants.

_____

**ALICE ROBIE RESNICK, J.**

**{¶ 15}** This case, which the court of appeals characterized as a "complex case involving the interplay of the Public Records Act, the confidentiality provisions of the State Medical Board of Ohio, and similar, but not identical provisions governing the State Department of Insurance" (footnote omitted), raises two separate yet interrelated issues for our consideration. First, we must determine whether the records in question are "public records" within the meaning of R.C. 149.43. If these records are not public records but rather are confidential investigatory materials, then we must determine whether the presence of a nonagent, third party during witness interviews constitutes a waiver of confidentiality in the otherwise privileged material.

I. Confidentiality of Investigatory Records

**{¶ 16}** Ohio's Public Records Act is codified in R.C. 149.43 *et seq.* The statute defines "[p]ublic record" as "any record that is kept by any public office." R.C. 149.43(A)(1). The term "public office" includes "any state agency * * * established by the laws of this state for the exercise of any function of government." R.C. 149.011(A). R.C. 149.43 must be construed liberally in favor of broad access to records kept by public offices, and any doubt is to be resolved in favor of disclosure of the records. *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 264, 685 N.E.2d 1223, 1227, citing *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey* (1997), 78 Ohio St.3d 400, 401, 678 N.E.2d 557, 559. Additionally, mandamus is the appropriate remedy to compel compliance with R.C. 149.43. R.C. 149.43(C); see, also, *State ex rel. Multimedia, Inc. v.*

*Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377, citing *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 88-89. With these standards in mind, we now proceed.

A.  Medical Board Records

{¶ 17} The Medical Board is a "public office" for the purposes of R.C. 149.43. Former R.C. 4731.22(C)(1), the applicable provision governing Medical Board investigations, stated, "Information received by the board pursuant to an investigation shall be confidential and not subject to discovery in any civil action." 146 Ohio Laws, Part V, 8765.  (The current version is codified at R.C. 4731.22[F][5] and is virtually the same.)

{¶ 18} In *State Med. Bd. of Ohio v. Murray* (1993), 66 Ohio St.3d 527, 536, 613 N.E.2d 636, 642-643, we held that information contained in the Medical Board's records "is to be kept confidential at all times and is not, under any circumstances, * * * discoverable in a civil action."  Based on the plain language employed in R.C. 4731.22, language that we previously deemed a "clear legislative directive," we hold that the Medical Board's investigative records are not public records.  *Id.* at 536, 613 N.E.2d at 642.

{¶ 19} R.C. 149.43(A)(1) defines "public record" and enumerates exceptions from the definition of "public record" for purposes of the Public Records Act.  "Records the release of which is prohibited by state or federal law" are not public records.  R.C. 149.43(A)(1)(q), formerly R.C. 149.43(A)(1)(p), 146 Ohio Laws, Part I, 134.  In enacting former R.C. 4731.22(C)(1), the General Assembly specifically exempted the Medical Board's investigative records from disclosure under R.C. 149.43.

{¶ 20} Having determined that the Medical Board's investigative records are not public records within the meaning of R.C. 149.43, we must now determine whether the Medical Board waived its right to confidentiality by allowing Wilson, a third party, to attend witness interviews.

{¶ 21} Former R.C. 4731.22(C)(1) mandated that the board "conduct all investigations and proceedings in such a manner as to protect patient confidentiality. The board shall not make public names or other identifying information about patients unless proper consent is given or a waiver of the patient privilege exists" under R.C. 2317.02(B). 146 Ohio Laws, Part V, 8766. (This mandate remains unchanged in the current version of R.C. 4731.22. See R.C. 4731.22[F][5]. Moreover, this current version requires the board to protect confidentiality not only of patients but also of persons who file complaints with the board.) This provision contains safeguards designed to protect patient confidentiality in the same manner that the physician-patient privilege protects patient confidences. *State Med. Bd. of Ohio v. Miller* (1989), 44 Ohio St.3d 136, 138, 541 N.E.2d 602, 604. The court of appeals correctly recognized that by allowing Wilson to attend witness interviews, the Medical Board violated its duty to maintain the confidentiality in the information it gathered. We agree that it was improper for the Medical Board to give a private third party access to this information. Thus, the issue remains whether the Medical Board's breach of confidentiality constitutes a waiver.

{¶ 22} One physician, Dr. Semertzides, authorized the release of information gathered at an interview attended by Wilson. The court of appeals determined that by signing the release Semertzides waived his privilege of confidentiality with regard to information gathered at his interview. Consequently, the court of appeals directed the trial court to release the records pertaining to Semertzides and to withhold any information concerning anyone else whose privacy rights were implicated. The court ordered that all other records should remain confidential because "[w]ithout a valid waiver from all persons whose privacy rights are implicated, these records may not be disclosed under the Public Records Act."

{¶ 23} "Waiver" is defined as a voluntary relinquishment of a known right. See *Chubb v. Ohio Bur. of Workers' Comp.* (1998), 81 Ohio St.3d 275, 278, 690 N.E.2d 1267, 1269, citing *State ex rel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, Vinton Joint Solid Waste Mgt. Dist. Bd. of Directors* (1996), 75 Ohio St.3d 611, 616, 665 N.E.2d 202, 207. Persons may either expressly or impliedly waive statutory provisions intended for their own benefit, but statutory provisions cannot be waived when they are intended for the benefit of others. See *Brannock v. Brannock* (1986), 104 N.M. 385, 386, 722 P.2d 636, 637; see, also, *State v. Ventura* (1999), 101 Ohio Misc.2d 15, 19, 720 N.E.2d 1024, 1027. Moreover, it is a well-settled general principle that no party has the power to waive matters that affect third parties, because the holder of the privilege is the only one who has the power to relinquish it. *Id.*

{¶ 24} Several groups have a privilege of confidentiality in the Medical Board's investigative files. *In re Kralik* (1995), 101 Ohio App.3d 232, 236, 655 N.E.2d 273, 275. These groups include patients, physicians who are under investigation, investigation witnesses, and any other persons whose confidentiality right is implicated by a Medical Board investigation. *Id.* The holder of the confidentiality privilege is the one who must waive it before the contents of the Medical Board's investigative files relating to that person may be divulged. *Id.* Hence, when someone who is not authorized to waive the privilege discloses privileged information, the information remains privileged. *State v. Shipley* (1994), 94 Ohio App.3d 771, 775, 641 N.E.2d 822, 825, citing *Powers v. Chicago Transit Auth.* (C.A.7, 1989), 890 F.2d 1355, 1357-1359.

{¶ 25} By permitting Wilson to attend Medical Board interviews with witnesses, the Medical Board waived its own confidentiality privilege; however, the Medical Board cannot unilaterally waive others' privileges to confidentiality, because the Medical Board is not the holder of those privileges.

**{¶ 26}** The court of appeals properly ordered an *in camera* review of records pertaining to the interview with Semertzides and the release of those records after they are redacted to protect the confidentiality of anyone else who has not waived the privilege.

B. Insurance Department Records

**{¶ 27}** The State Department of Insurance is a "public office" for purposes of R.C. 149.43. At issue is R.C. 3901.44, which relates to insurance fraud investigatory records.

**{¶ 28}** Former R.C. 3901.44(A) stated: "All papers, documents, reports, and evidence in the possession of the division of insurance fraud of the department of insurance that pertain to an investigation conducted or authorized by the division are confidential law enforcement investigatory records under section 149.43 of the Revised Code. Notwithstanding such section, the division shall not prohibit public inspection of such records that pertain to an investigation after the expiration of all federal and state statutes of limitations applicable to the particular offense to which the papers, documents, reports, and evidence relate." 142 Ohio Laws, Part III, 4579. (The current version, codified at R.C. 3901.44[B], is substantially the same.)

**{¶ 29}** Former R.C. 3901.44(A)'s explicit reference to R.C. 149.43 requires that the two sections be read in conjunction. "Confidential law enforcement investigatory records" are not public records for purposes of R.C. 149.43. Former R.C. 149.43(A)(1), now R.C. 149.43(A)(1)(h). However, this is not the end of the inquiry. R.C. 149.43(A)(2) defines "confidential law enforcement investigatory records" as "any record that pertains to a law enforcement matter of criminal, quasi-criminal, civil, or administrative nature, *but only to the extent that the release of the record would create a high probability of disclosure of any of the following*:

"(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

"(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source." (Emphasis added.)

{¶ 30} The Insurance Department invites this court to hold that analysis pursuant to R.C. 149.43 is unnecessary because the plain language of R.C. 3901.44 specifically deems insurance fraud investigatory records "confidential law enforcement investigatory records" under R.C. 149.43. We decline to adopt this interpretation.

{¶ 31} A two-step analysis is required when exempting records from release under R.C. 149.43(A)(2). *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377. The first inquiry is whether the record in question is a confidential law enforcement record. The second inquiry is whether releasing the record would create a high probability of disclosure of any of the four categories of information specified in R.C. 149.43(A)(2).

{¶ 32} The language employed by the General Assembly in former R.C. 3901.44(A), now (B), answers the first query in the affirmative. In essence, what R.C. 3901.44 does is classify insurance fraud investigatory records as "confidential law enforcement investigatory records" under R.C. 149.43. Thus, the next step is to ascertain whether any of the exemptions in R.C. 149.43(A)(2) apply.

{¶ 33} "[E]xceptions to disclosure must be strictly construed against the custodian of the public records, and the burden to establish an exception is on the custodian." *Multimedia*, 72 Ohio St.3d at 142, 647 N.E.2d at 1377, citing *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911,

912; see, also, *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 266, 685 N.E.2d 1223, 1228; *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 370, 725 N.E.2d 1144, 1148-1149. Our duty requires us to strictly construe confidential law enforcement investigatory records and "resolve any doubts in favor of disclosure." *Multimedia*, 72 Ohio St.3d at 143, 647 N.E.2d at 1378. Generally, in the absence of evidence that the custodian of the records disclosed their contents to the public, the exemptions are fully applicable. *Petro*, 80 Ohio St.3d at 265, 685 N.E.2d at 1227; see, also, *State ex rel. WLWT-TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369-1370.

{¶ 34} Application of a statutory exemption to a particular document is best accomplished by an *in camera* inspection. See *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 243, 520 N.E.2d 207, 210. Based on the limited record before us, we are unable to discern the nature of the records at issue. Consequently, the trial court is the tribunal best equipped to inspect these documents *in camera*, to determine whether their release "would create a high probability of disclosure" of any of the material specified in R.C. 149.43(A)(2), and to withhold any information that falls within a statutory exemption. After examination of the investigatory files, material that does not fall within an exemption must be disclosed upon a request made pursuant to R.C. 149.43, and any exempted information should be withheld. See *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 589 N.E.2d 24, paragraph one of the syllabus.

{¶ 35} Having concluded that a two-part inquiry is required in order to determine whether insurance fraud investigatory records, which R.C. 3901.44 designates "confidential law enforcement investigatory records" for purposes of R.C. 149.43, are exempted from release, we now turn to the question of whether the Insurance Department waived its right to rely on any applicable exemptions.

{¶ 36} R.C. 149.43's exemptions are "usually fully applicable absent evidence that the public office having custody of the records disclosed the records

10

to the public." *Petro*, 80 Ohio St.3d at 265, 685 N.E.2d at 1227. Wilson, an investigator employed by Anthem, was present at several witness interviews conducted by Kaising. During the investigation of the appellees, Wilson attended these interviews as a representative of Anthem and brought with him a working knowledge of the insurance industry and his employer. At no time during his investigation of the appellees did Kaising share or disclose the contents of the Insurance Department's investigatory file with Wilson. Investigations into insurance fraud are not conducted in a vacuum. Investigators working for private insurance companies may have occasion to interact with investigators from the Insurance Department. As a matter of fact, R.C. 3999.42, which went into effect in March 1998, requires that insurers having a "reasonable belief that a person is perpetrating or facilitating an insurance fraud * * * notify the department of insurance." Although Wilson is a member of the public, his presence at witness interviews conducted by the Insurance Department is not tantamount to a public disclosure and does not effectuate a waiver of any applicable statutory exemptions.

{¶ 37} Thus, the court of appeals properly remanded this cause so that the trial court could conduct an *in camera* inspection of the records in question.

## II. Conclusion

{¶ 38} The Public Records Act serves a laudable purpose by ensuring that governmental functions are not conducted behind a shroud of secrecy. However, even in a society where an open government is considered essential to maintaining a properly functioning democracy, not every iota of information is subject to public scrutiny. Certain safeguards are necessary. Accordingly, we affirm the court of appeals and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 39} I agree that the Medical Board's investigative records are not public records and that the Medical Board waived its own—and only its own—confidentiality privilege with respect to the Medical Board records discussed in Part IA of the majority opinion.

{¶ 40} I respectfully dissent, however, from the majority's judgment that the insurance department records discussed in Part IB might be subject to public disclosure under the Public Records Act. Former R.C. 3901.44 explicitly categorizes the insurance department documents at issue as "confidential law enforcement investigatory records [and thereby excepted from public disclosure as 'public records'] under section 149.43," which precludes the judiciary from reaching a contrary result. The majority analyzes the applicability of the "confidential law enforcement investigatory records" exception and concludes that it does not apply, when the statute plainly states otherwise.

12

{¶ 41} We are not privileged to ignore the plain and unambiguous language of a statute. *State v. Krutz* (1986), 28 Ohio St.3d 36, 38, 28 OBR 96, 97, 502 N.E.2d 210, 211. To hold as the majority does is to do just that.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

————————————

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 42} I dissent with respect to whether the presence of a third party at witness interviews constituted a waiver of the State Medical Board's privilege of confidentiality. I also join Justice Cook's dissent and would find that insurance department records are not subject to disclosure under the Public Records Act. I concur as to the remainder of the majority opinion.

{¶ 43} Under Part IB of the majority's opinion, "Insurance Department Records," the majority concludes that the presence of Anthem's investigator did not constitute a waiver of the Department of Insurance's privilege of confidentiality. I would apply the same rationale to Part IA and find that the investigator's presence also did not constitute a waiver of the Medical Board's privilege. There is no reason to distinguish between the two.

{¶ 44} An insurance fraud investigator is integral to the work of both the Department of Insurance and the Medical Board to uncover fraud or handle allegations of unauthorized medical practice. The investigator possesses the expertise, knowledge, and investigative background that enable the Medical Board and Department of Insurance to determine the direction of their own investigations. At times, there were joint investigations that involved the investigator for the State Medical Board, Patricia Elliss, the Department of Insurance investigator, Robert Kaising, and Anthem's investigator, Richard Wilson. They worked together to gather evidence and interview witnesses.

{¶ 45} The allegations being investigated involved issues of fraudulent billing, with complex billing codes and methods. The use of experts, such as

Anthem's investigator, is crucial in helping the Medical Board to effectively conduct its investigation. The majority recognizes this importance to the Department of Insurance yet somehow excludes the Medical Board from obtaining the same benefits.

{¶ 46} The majority does not address the effect of its decision upon the presence of other third parties; however, the logical extension is that victims and other parties who wish to have a trusted advisor, family member, or friend present at their interview will now waive the confidentiality of their statements. This could affect a victim's willingness to report wrongdoing.

{¶ 47} We should hold that the presence of an insurance investigator who is an active participant in the investigation of the wrongdoing at a witness interview does not result in a waiver of the confidentiality of the Medical Board's investigative records.

{¶ 48} Therefore, I respectfully dissent.

_____