OPINION
{¶ 1} Appellant, Glenda M. Dahlquist, M.D., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("board"), permanently revoking appellant's license to practice medicine and surgery in the state of Ohio. For the reasons that follow, we affirm.
 {¶ 2} By letter dated February 13, 2002, the board notified appellant, a pain management specialist, of its intention to initiate disciplinary proceedings against her certificate to practice medicine and surgery in the state of Ohio based upon her treatment of sixteen patients. The board alleged that appellant's treatment of the patients failed to conform to minimal standards of care of similar practitioners under the same or similar circumstances in violation of R.C. 4731.22(B)(6). The board further alleged that in treating the patients, appellant failed to maintain minimal standards applicable to the selection or administration of drugs, or failed to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease in violation of R.C. 4731.22(B)(2) as in effect March 9, 1999. The board also alleged that appellant failed to use reasonable care discrimination in the administration of drugs or failed to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease in violation of R.C. 4731.22(B)(2) as in effect prior to March 9, 1999.
 {¶ 3} Pursuant to appellant's request, an adjudication hearing was held before the board's hearing examiner in October and November 2002. At the hearing, the board offered the medical records of the sixteen patients and the expert testimony of Dr. Paul Shin. Appellant testified extensively on her own behalf and presented expert testimony from Dr. Hal Blatman. In addition, three of appellant's patients testified on her behalf.
 {¶ 4} In November 2003, the hearing examiner issued a 142-page report and recommendation which contained an exhaustive patient-by-patient summary of the facts concerning the medical care provided by appellant, along with a detailed patient-bypatient summary of the testimony of appellant and Drs. Shin and Blatman. The hearing examiner found that appellant prescribed medications in types, amounts, and combinations that were inappropriate and for protracted periods of time that were not justified, and inappropriately administered injections or blocks. He further found that appellant failed to adequately recognize and address indications of drug abuse or the increased risk of drug abuse. He also found that appellant failed to identify reasonable pain diagnoses, failed to obtain records of the patients' prior or concurrent medical treatment, failed to make necessary referrals for treatment and failed to document the findings of outside specialists. He further found that appellant failed to appropriately document results of toxicology screens, failed to consider whether psychological factors affected patients' pain, failed to obtain or document appropriate liver function studies, and continued to utilize treatment modalities that provided only temporary pain relief.
 {¶ 5} The hearing examiner concluded that appellant's conduct constituted a violation of R.C. 4731.22(B)(6) and 4731.22(B)(2) as in effect both prior to and after March 9, 1999 and recommended permanent revocation of appellant's medical license. After appellant filed objections, the board convened to consider the matter on January 14, 2004. Following discussion, the board amended the hearing examiner's report and recommendation to permit appellant 30 days to wind down her practice and then approved, as amended, the order permanently revoking appellant's certificate to practice medicine and surgery in the state of Ohio.
 {¶ 6} Appellant appealed the board's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court affirmed the board's order, finding it to be supported by reliable, probative, and substantial evidence and in accordance with law. Appellant has timely appealed that judgment, and advances the following three assignments of error:
[1]. The decision of the Court of Common Pleas should be reversed as the trial court abused its discretion in finding that pursuant to R.C.4731.22(F)(5) the expert witness for the State did not need to disclose to Appellant conversations that the expert had with Board personnel, which may have led the expert to alter his report and change the expert's opinion prior to testifying at the administrative hearing in this case.
[2]. The decision of the trial court should be reversed as Appellant was denied the right of due process of law by the Board's failure to follow R.C. 4731.052 and O.A.C. 4731-21 et seq. regarding the treatment of patients with intractable pain, holding Dr. Dahlquist instead to an undefined "standard of care".
[3]. The decision of the trial court should be reversed as the trial court abused its discretion when it affirmed the decision of the Board which was not supported by the evidence presented at the hearing.
 {¶ 7} Initially, we note that a court of common pleas is bound to uphold an order of the medical board if the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621;Hayes v. State Med. Bd. of Ohio (2000), 138 Ohio App.3d 762, 767. Generally, a common pleas court should defer to administrative resolution of evidentiary conflicts. General Motors Corp. v. Joe O'Brien Chevrolet,Inc. (1997), 118 Ohio App.3d 470, 482. Thus, as long as there is reliable, probative, and substantial evidence to support the board's findings, a common pleas court may not substitute its judgment on disputed facts for that of the board. Id. Whether any evidence supports the decision is a question of law. Id. at 483.
 {¶ 8} Appellate review of an administrative appeal is, however, limited to determining whether the common pleas court abused its discretion. Pons, supra. Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of the board or the common pleas court on issues of fact. However, a court of appeals' review of whether the board's order is in accordance with law is plenary. Pons,
supra.
 {¶ 9} By the first assignment of error, appellant contends that the common pleas court abused its discretion in finding that a discussion between a board staff member and the state's expert witness, Dr. Shin, was protected by the confidentiality privilege set forth in R.C.4731.22(F)(5).
 {¶ 10} Dr. Shin testified that at the board's request, he reviewed the sixteen patient files at issue and prepared a written report outlining his opinion as to appellant's treatment and care of those sixteen patients. On cross-examination, Dr. Shin testified that he revised his report following a discussion with a board staff member. Upon the state's objection to appellant's attempt to further question Dr. Shin on the matter, the hearing examiner, citing R.C. 4731.22(F)(5), ruled that appellant was not permitted to question Dr. Shin concerning the identity of the board staff member, the content of his discussion with that individual, or any revisions he may have made to the report pursuant to that discussion. The common pleas court upheld the hearing examiner's ruling, finding it to be "consistent with the statutory provision that such investigations are confidential." (June 29, 2004 Dec., pg. 15). The common pleas court further found that appellant had failed to demonstrate prejudice arising from any alleged error in the hearing examiner's ruling.
 {¶ 11} R.C. 4731.22(F)(5) mandates that the board "conduct all investigations and proceedings in a manner that protects the confidentiality of patients and persons who file complaints with the board." The statute further provides that "[i]nformation received by the board pursuant to an investigation is confidential and not subject to discovery in any civil action." In State Med. Bd. of Ohio v. Murray
(1993), 66 Ohio St.3d 527, the Ohio Supreme Court applied this statutory language, formerly found in R.C. 4731.22(C)(1), to the adjudication of a disciplinary matter before a board appointed hearing examiner. The court held that information contained in board records and obtained pursuant to an investigation "is to be kept confidential at all times and is not, under any circumstances * * * discoverable in a civil action." Id. at 536.
 {¶ 12} Several groups enjoy a privilege of confidentiality in the board's investigative files. State ex rel. Wallace v. State Med. Bd. ofOhio (2000), 89 Ohio St.3d 431, 435. These groups include investigation witnesses, patients, physicians under investigation, and any other person whose confidentiality right is implicated by a board investigation. Id. The state argues that the hearing examiner's ruling was correct because Dr. Shin, as an agent for the board under a contract to provide record review and testimony, qualifies as an investigation witness whose testimony is privileged under R.C. 4731.22(F)(5). In contrast, appellant contends that because Dr. Shin was retained by the board only as an expert witness to review the patient files and opine as to whether appellant's treatment practices fell below the applicable standard of care, he does not qualify as an investigation witness under R.C.4731.22(F)(5). Accordingly, appellant avers that because R.C. 4731.22(F)(5) does not apply to Dr. Shin, he should have been required to testify regarding all the information he gathered in formulating his expert opinion, including his discussions with board personnel. Appellant argues, alternatively, that the board waived its confidentiality privilege when it provided confidential investigative information to Dr. Shin.
 {¶ 13} Assuming, without deciding, that we accept either, or both, of appellant's arguments, we conclude that appellant has not demonstrated how she was prejudiced by the hearing examiner's ruling or how she was unable to defend herself in this matter. The hearing examiner precluded appellant only from inquiring about the identity of the board staff member, the content of that discussion, and the specific revisions Dr. Shin made to the report. The hearing examiner did not preclude appellant from questioning Dr. Shin as to his ultimate opinion about appellant's medical practices, including whether or not that opinion had ever changed over the course of his record review. As well, appellant was not prevented from questioning Dr. Shin about what information he reviewed or relied upon in preparing his report and whether he was influenced by any information other than that referenced in his report in formulating his opinion. Appellant cross-examined Dr. Shin extensively for two days regarding his report and opinion and was thus provided ample opportunity to question him within the parameters of the hearing examiner's ruling. Further, to the extent appellant intended to impeach Dr. Shin by soliciting testimony that he was coached by a board staff member to revise his opinion about appellant's medical practices in a manner that would support the allegations referenced in the notice so that the board could prove its case against appellant, we find that appellant successfully created such an implication through questioning which resulted in the disclosure that the report was revised following discussion with the board staff member. Accordingly, the trial court did not abuse its discretion in upholding the hearing examiner's ruling. The first assignment of error is overruled.
 {¶ 14} By the second assignment of error, appellant contends she was denied her right to due process of law by the board's failure to follow the standards of care set forth in R.C. 4731.052 and Ohio Adm. Code 4731-21 regarding the treatment of intractable pain.
 {¶ 15} A fundamental requirement of due process is notice and the opportunity to be heard in an administrative proceeding which permanently revokes an individual's certificate to practice medicine. Korn v. OhioState Med. Bd. (1988), 61 Ohio App.3d 677, 684. In other words, due process requires the board to furnish a charged individual with sufficient information to enable such person to challenge adverse evidence and respond to the charges. In re Kralik (1995), 101 Ohio App.3d 232, 237;Johnson v. State Med. Bd. of Ohio (Sept. 28, 1999), Franklin App. No. 98AP-1324.
 {¶ 16} In October 1997, the General Assembly enacted R.C. 4731.052, which addresses a physician's authority to treat intractable pain[1]
with dangerous drugs. R.C. 4731.052(B) directed the board to "adopt rules * * * that establish standards and procedures to be followed by physicians in the diagnosis and treatment of intractable pain, including standards for managing intractable pain by prescribing, personally furnishing, or administering dangerous drugs in amounts or combinations that may not be appropriate when treating other medical conditions." Pursuant to that mandate, the board, in November 1998, adopted Ohio Adm. Code Chapter 4731-21, which, inter alia, sets forth a series of standards to be utilized by practitioners specializing in the treatment of intractable pain.
 {¶ 17} Dr. Shin testified that in formulating his opinion about appellant's treatment practices, he did not reference or review either R.C. 4731.052 or Ohio Adm. Code Chapter 4731-21. Appellant argues that because Dr. Shin's opinion testimony was based upon prevailing standards of medical care rather than upon the specific standards for treating patients with intractable pain set forth in the statute or rules, she was, in essence, held to an undefined standard of care, and, accordingly, little weight should be given to Dr. Shin's testimony. The state asserts that appellant was not charged with specific violations of R.C. 4731.052 or Ohio Adm. Code Chapter 4731-21 because appellant treated many of the patients at issue prior to enactment of the statute and rules. A review of the record supports the state's assertion — ten of the 16 patients at issue were treated prior to the effective date of the statute; 13 of the 16 were treated prior to the effective date of the rules. Thus, the state argues, Dr. Shin's testimony concerning the prevailing standards of care in the field of pain management was appropriate and supports the board's order.
 {¶ 18} Both parties assert in their briefs that the standard of care for treating patients with intractable pain was established by those physicians practicing pain management prior to the enactment of the statute and rules and that the statute and rules merely codified those standards. Indeed, R.C. 4731.052(C) states that "[t]he physician's diagnosis and treatment decisions shall be made according to accepted and prevailing standards for medical care." Similarly, Ohio Adm. Code4731-21-02(A) provides that "a practitioner shall comply with accepted and prevailing standards of care which shall include, but not be limited to" those set forth in the rules.
 {¶ 19} Dr. Shin is board certified by the American Board of Anesthesiology with a subspecialty in pain management. After completing the certification process in 1994, he directed the Pain Management Center at Lakewood Hospital. Eighteen months later, he joined the staff at the Cleveland Clinic and practiced exclusively in the area of pain management. He has been at the Crystal Clinic Surgery Center since 1999 and is currently the Director of Pain Management.
 {¶ 20} At the hearing, Dr. Shin provided detailed testimony about the medical treatment appellant provided to each of the sixteen patients in question. In each case, Dr. Shin opined that based upon the prevailing standards of care in the area of pain management, appellant either failed to conform to minimal standards of care of similar practitioners under the same or similar circumstances, failed to maintain minimal standards applicable to the selection or administration of drugs, or failed to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease or failed to use reasonable care discrimination in the administration of drugs or failed to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease.
 {¶ 21} Moreover, appellant's argument ignores the fact that the board is comprised primarily of physicians and surgeons who are familiar with the prevailing standards of care in the medical profession. In Murray,
supra, the Ohio Supreme Court addressed the case of a physician the board found to have failed to use reasonable care discrimination in the administration of drugs and failed to conform to minimal standards of care with regard to the prescribing of anabolic steroids to patients for purposes of enhancing athletic ability. Much of the physician's conduct occurred prior to the effective date of the board's rule prohibiting such conduct. The physician maintained that because no medical standards existed regarding steroid use prior to the board's rule prohibiting that conduct, his alleged failure to meet minimal standards of care prior to the effective date of the rule was not supported by reliable, probative, and substantial evidence due to the lack of expert testimony. The court disagreed, explaining:
Murray also appears to ignore the fact that the board is comprised primarily of experienced health professionals. The legislature and the courts of Ohio have delegated comprehensive decision-making power to the board. Such power includes, but is not limited to, the authority to rely on the board's own knowledge when making a decision * * *.
It is well established that "* * * the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care." Arlen v. State (1980), 61 Ohio St.2d 168, 172, 15 O.O.3d 190, 193, 399 N.E.2d 1251, 1254 * * *.
Id. at 533.
 {¶ 22} The General Assembly, under Chapter 4731, has delegated the interpretation of the technical requirements of the medical profession to a twelve-member medical board, eight of whom are physicians and surgeons licensed to practice in Ohio. The Supreme Court of Ohio has upheld this delegation. See Pons, supra at 623. A majority of the board members thus possess the specialized knowledge required to determine acceptable standards of medical practice. Id. Armed with such specialized knowledge, the board is capable of interpreting the technical requirements of the medical profession and determining whether a physician's conduct falls below the minimal standard of care. Id. "When reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." Id. at syllabus.
 {¶ 23} Following Pons, this court must accord due deference to the board's interpretation of the prevailing standards of care in the treatment of patients with intractable pain. The record establishes that the board reviewed the evidence presented at the hearing, including the testimony of both experts, as well as the hearing examiner's findings and recommendations. The board examined appellant's conduct independently, applied its professional expertise to the material presented, and reached a conclusion fully supported by the evidence. Accordingly, the second assignment of error is overruled.
 {¶ 24} By the third assignment of error, appellant contends that the board's determination that appellant is not amenable to reeducation is not supported by reliable, probative, and substantial evidence. Appellant argues that her testimony as to the significant improvements she made to her practice over the years should have been accepted by the board as clear evidence that she was amenable to reeducation.
 {¶ 25} In his report and recommendation, the hearing examiner found that appellant demonstrated a reckless and unjustifiable disregard of her patients' obvious drug seeking behavior, alcohol and drug abuse, depression, and suicidal tendencies, and had disregarded the advice and concerns of consultants and family members. He also determined that appellant had prescribed depressant medications in amounts that could have had, and may have had, disastrous effects. The hearing examiner concluded that appellant's conduct constituted violations of R.C. 4731.22(B)(6) and (B)(2) as in effect both prior to and after March, 1999 and recommended permanent revocation of appellant's medical license, stating as follows:
It is difficult to imagine that any physician could fail to recognize the inherent dangers in Dr. Dahlquist's treatment of Patients 1 through 16. Nevertheless, even at hearing, Dr. Dahlquist argued that her care of these patients had been appropriate. Dr. Dahlquist's failure to comprehend the egregiousness of her conduct suggests that Dr. Dahlquist is not amenable to reeducation.
(Nov. 13, 2003 Report and Recommendation, pg. 142.)
 {¶ 26} At their January 14, 2004 meeting, the board deliberated extensively before voting to adopt the hearing examiner's recommendation. Those deliberations wholly support that recommendation, including the hearing examiner's finding that appellant could not be rehabilitated. Only one physician on the board spoke in favor of rehabilitation. The other board members plainly believed that appellant's license should be permanently revoked. For instance, one of the physicians, apparently rejecting appellant's testimony concerning the changes she made to her practice, stated that there was no evidence in the record that appellant's style of practice changed at all over a long period of time. That same physician also expressed concern that appellant continued to claim that she did not deviate from the standards of care. Another physician opined that appellant was not a candidate for rehabilitation due to the overwhelming danger appellant's prescribing practices presented to her patients. A non-physician member of the board remarked that appellant did not seem to understand that instead of helping her patients, she was actually hurting them.
 {¶ 27} In short, the record establishes that the board reviewed the evidence presented at the hearing, including appellant's testimony that she changed several aspects of her practice in an effort to benefit her patients. While appellant's efforts to improve her practice were certainly laudable, a majority of the board members concluded that appellant's violations were so severe that she could not be rehabilitated. The record in this case supports that determination. Accordingly, the third assignment of error is overruled.
Having overruled each of appellant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Lazarus, JJ., concur.
[1] R.C. 4731.052(A)(2) defines "intractable pain" as "a state of pain that is determined, after reasonable medical efforts have been made to relieve the pain or cure its cause, to have a cause for which no treatment or cure is possible or for which none has been found."