[Cite as *Gill v. Rana*, 2017-Ohio-591.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KULWINDER GILL, et al., | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellees | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RAKESH RANA, et al., | : | Case No. CT2016-0027 |
| | : | |
| Defendant - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Muskingum County
                                Common Pleas Court, Case No.
                                CH2015-0011

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               February 13, 2017

APPEARANCES:

For Plaintiff-Appellees                 For Defendant-Appellants

RICHARD O. MAZANEC                      SANJAY K. BHATT
1422 Euclid Ave., Suite 500             2935 Kenny Rd., Suite 225
Cleveland, Ohio 44115                   Columbus, Ohio 43221

*Baldwin, J.*

**{¶1}** Defendants-appellants Rakesh Rana and State Street Market, Inc. appeal from the June 23, 2016 Amended Journal Entry of the Muskingum County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant State Street Market, Inc. is an Ohio corporation which owns and operates a carry-out store and liquor store. Appellant Rakesh Rana ("appellant Rana") is the sole shareholder and owner of appellant State Street.

**{¶3}** Appellee Kulwinder Gill ("appellee Gill") "and appellee Jasvinder Gill filed a complaint against appellants seeking compensation for services performed for appellants at the State Street Market.  Appellants filed a counterclaim. After the parties agreed to waive a jury trial and try the liability issues separately from the damage claims, a bench trial on the issue of liability was held on March 10, 2016.

**{¶4}** Testimony was adduced at trial that appellee Kulwinder Gill started working at the business in February of 2010. An agreement was drawn up by appellants' attorney that stated that appellee Gill would receive $3,333.00 a month for managing the business plus an additional 25% of the profits. The agreement further stated that appellee Gill's wife would receive 25% of the profits when she came later.  Appellee Gill testified that he signed the agreement and then gave it to appellant Rana and that he began working at the business on February 12, 2010. He testified that he worked from 7:00 a.m. to 10 p.m., except for Sundays when the business closed one hour earlier.

**{¶5}** Appellee Gill testified that on November 26, 2010, he started receiving a payroll check in the amount of $1,000.00 a week. He testified that he was not

compensated for his work from February 12, 2010 through November 26, 2010 when he went on the payroll. The following testimony was adduced when he was asked why he would work for 40 weeks without pay:

A. Because our verbal very clearly and our understanding – understanding and agreement was we going to make – see what the property makes so we can understand, see how much property makes so we can split, the way I understand. And when store have a cash flow money, that's when, you know, you get paid.

Q. All right.

A. And then he [appellant Rana] went out of country.

{¶6} Transcript of March 10, 2016 trial at 53. According to appellee Gill, the two never divided any profits. He further testified that he regularly discussed the operation of State Street with appellant Rana who monitored the business's bank statements and check registers. When asked how many hours he worked, appellee Gill testified that he typically worked over one hundred hours a week. Between November 26, 2010 and March 11, 2011, when he was in a car accident and ended his employment, appellee Gill was paid $1,000.00 a week and given credit for 80 hours a week.

{¶7} On cross-examination, appellee Gill testified that he signed the agreement, but then testified that he never signed the same. He further testified that prior to starting managing the business, the parties agreed that "we [appellee Gill and his wife] going to take some money as per month, then the profit." Transcript of March 10, 2016 trial at 76. He agreed that they were to take "some money that you needed to live on" and then split

the profits. Transcript of March 10, 2016 trial at 76. Appellee Gill testified that the parties agreed on a minimum of $1,000.00 a week.

{¶8} Testimony was adduced at trial that appellee Gill did all of the hiring and firing for the business and paid vendors by either paying cash or writing and signing checks. He also signed the payroll checks for all employees, including his own, and submitted payroll information to the accountant for the business that included the number of hours that the employees worked. Appellant Gill testified that he decided not to ask for money initially because, "per our agreement that cash flow has to be there in order to get it." Transcript of March 10, 2016 trial at 89. He stated that the agreement was that he would start taking money when there was cash flow and testified that in the fall of 2010, he put his own name on the sheet faxed to the accountant and started receiving paychecks. The checks issued to appellee Gill for pay, commencing in November of 2010, were signed by him.

{¶9} At trial, appellee Gill was questioned about his response to an interrogatory in which he stated that he had signed the parties' written agreement in November of 2009 at appellants' attorney's office. Appellee denied that he had signed the agreement in such office and indicated that it was his counsel who had answered the interrogatory.

{¶10} On redirect, appellee Gill testified that he never intended to volunteer his time and not to be paid for the first 40 weeks that he worked at the business.

{¶11} At trial, appellant Rakesh Rana testified on cross-examination that he monitored the business accounts on a regular basis and spoke with appellee Gill whenever he had a question. He, when asked, agreed that he did not expect appellee Gill to work for free and testified that, in his mind, he reached an agreement with appellee Gill

that appellee Gill would be paid $40,000.00 a year in salary. According to appellant Rana, appellee Gill chose not to be paid for the first 40 weeks he worked at the business because he wanted to prove himself first and see that the business was making money before taking a paycheck. Appellant Rana agreed that appellee Gill was not paid for the first 40 weeks he was there and did not dispute that appellee Gill's time sheets showed that he worked at least 80 hours a week.

{¶12} On direct examination, appellant Rana testified that appellee Gill did not consult him before he started paying himself $1,000.00 a week starting in October of 2010. He further testified that appellee Gill never contacted him prior to such time to indicate that he wanted to get paid. The following is an excerpt from his trial testimony:

Q. So in – in October or so of 2010, when he started taking a paycheck, did he call you up and say, hey, Rocky [appellant Rana], I'm going to pay myself?

A. No.

Q. Did he – and did he say I'm going to start paying myself $1,000 a month – or a week?

A. No.

Q. So did he call you up in March, April, May, June, July, August, all those, 2010 and say, Rocky, I want to get paid?

A. No, He never said he wants to get paid.

Q. Whose decision was it whether to take the money that – that he should have -- that – that he could have taken?

A. It was that he decided to draw $1,000 a week for him and his wife, but since, you know, I , you know, watched it, and since he didn't get paid to –

start with, so I didn't -- you know, more or less him getting paid.  So, I mean, by the time he was there they ended up paying himself $40,000.

Q.  So he was paying himself more than –

A.  More.

Q.  But you were okay with that, because he didn't take the money before?

A.  He didn't take anything to start with, so I didn't mind them paying that much, you know, money.  So eventually which – which came down to over $40,000.

Q.  Okay.

A.  Yeah.

Q.  Did you ever agree to have his wife take – or Ms. Gill take $1,000 a week?

A.  Well, that was $40,000 between him and his wife, so I didn't mind who - - who get the check, you know, who – but she – she was working there, or – between him and her, one of them will be there to, you know, run the place.

Q.  So in those months that he did not take the check, was it your decision not to pay him, or was that his decision not to take the check?

A.  That was his decision not to pay himself.

**{¶13}** Transcript of March 10, 2016 trial at 149-150.

**{¶14}** Appellant Rana also denied ever telling appellee Gish not to take a paycheck for the first 40 weeks and testified that appellee Gill told him that he wanted to prove himself before taking money. He testified that he went to India in April of 2010 after

recovering from heart surgery and did not come back until June or July of 2010. On recross, appellant Rana testified that he never objected to appellee Gill paying himself and his wife $1,000.00 a week without consulting with him because appellee Gill had never paid himself earlier from February of 2010 through October of 2010.

{¶15} At the conclusion of the evidence, the trial court asked the parties to brief the issue of whether or not appellee Gill had waived his right to be compensated for the first 40 weeks of his employment. Subsequently, the trial court, as memorialized in a Journal Entry filed on April 21, 2016, found that appellee Gill did not waive his right to be compensated for his hours of employment. The trial court scheduled a trial on damages for June 3, 2016.

{¶16} At the June 3, 2016 trial, appellant Rana testified that, as stipulated to by the parties, appellee Gill worked at the business from February 10, 2010 until March 10, 2011. He testified that, prior to appellee Gill working there, the parties agreed that appellee Gill would be paid $3,300.00 a month, or $40,000.00 per year, and that the parties had never signed a written contract that had been drafted. According to appellant Rana, appellee Gill managed the business from February 12, 2010 through March 10, 2011 and did all of the hiring and firing. Appellant Rana testified that most of the employees made minimum wage and that when appellee Gill started taking a salary of $1,000.00 a week in November of 2010, he did not ask appellant Rana how much to take. Appellant Rana testified that he allowed him to take $1,000.00 a week because appellee Gill had not drawn a salary for the first 40 weeks. Appellant Rana testified that he did not agree that appellee Gill's wife could draw a salary of $1,000.00 a week once she started working at the business in September of 2010. He testified that it was his understanding

that the manager's compensation was split between the two and that he had never hired the wife to manage his business. Appellant Rana asked that any money that the trial court found appellee Gill to be entitled to be set-off by the money paid to her. On cross-examination, he admitted that he monitored the checking accounts weekly and knew what both appellees were being paid. Appellant Rana, on redirect, testified that when appellee Gill started working at the store in February of 2010, there was not an agreement, written or verbal, between them as to how much he would be paid for his services.

{¶17} At the damages trial, appellee Gill testified that there was never an agreement between him and appellant Rana that if appellee Gill was paid $1,000.00 a week, it would compensate him for the first 40 weeks he worked at the business. He also denied that they had an agreement that, by paying appellee Gill's wife, appellant Rana would be compensating appellee Gill for such time. When asked about the amount of damages that he was seeking, appellee Gill testified that he was seeking $1,000.00 a week for 52 weeks and that appellant Rana had agreed to such amount. He further testified that he came up with the figure of $1,000.00 a week "[b]ecause we was supposed to take what we need to make my ends meet until we shared the profits" and he needed $1,000.00 a week to make ends meet. Transcript of June 3, 2016 trial at 33.

{¶18} The trial court, pursuant to a Journal Entry filed on June 3, 2016, awarded appellee Gill a judgment in the amount of $1,000.00 a week for forty (40) weeks, for a total of $40,000.00. In an Amended Journal Entry filed on June 23, 2016, the trial court stated that such amount was payable individually or jointly by both appellants.

{¶19} Appellants now raise the following assignments of error on appeal:

{¶20} THE TRIAL COURT ERRED BY RULING THAT APPELLEE, GILL, DID NOT WAIVE HIS RIGHT TO CLAIM COMPENSATION FOR THE PERIOD OF FEBRUARY, 2010, THROUGH OCTOBER, 2010.

{¶21} THE TRIAL COURT ERRED IN AWARDING DAMAGES TO APPELLEE IN THE AMOUNT OF $40,000.

I

{¶22} Appellants, in their first assignment of error, argue that the trial court erred in finding that appellee Gill did not waive his right to compensation for the period from February of 2010 through October of 2010. Appellant argues that the trial court's finding is against the manifest weight of the evidence.

{¶23} We note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993–Ohio–9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶24} " 'Waiver' is defined as a voluntary relinquishment of a known right." *State ex rel. Wallace v. State Med. Bd. of Ohio,* 89 Ohio St.3d 431, 435, 732 N.E.2d 960, 2000-

Ohio-213. Waiver assumes one has an opportunity to choose between relinquishing or enforcing a right. *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279, 1998-Ohio-628, 690 N.E.2d 1267. A party asserting a waiver "must prove a clear, unequivocal, decisive act of the party against whom the waiver is alleged, showing such a purpose or acts amounting to an estoppel on his part." *White Co. v. Canton Transportation Co.*, 131 Ohio St. 190, 2 N.E.2d 501, paragraph four of the syllabus (1936).

**{¶25}** In the case sub judice, there is no dispute that appellee Gill was not compensated for the period from February 12, 2010 through November 26, 2010. While appellants contend that he waived his right to compensation for such period, we disagree.

**{¶26}** At the March 10, 2016 trial, appellant Rana testified that he understood that appellee Gill would receive a salary of $40,000.00 per year ($3,333.00 per month). Appellee Gill testified that he was presented with a proposed employment agreement that provided that he would receive $3,333.00 a month plus 25% of the profits and his wife would receive 25% of the profits.

**{¶27}** While there was testimony that appellee Gill worked long hours at the business seven days a week and was, as manager, responsible for payroll and hiring and firing employees, he did not receive any compensation for the period from February 12, 2010 to November 26, 2010. When asked why he would work at the business for 40 weeks without getting paid, he testified that he wanted the business to show a monthly profit and positive cash flow before he was compensated. As noted by appellees, appellee Gill never signed a written waiver of his compensation for the 40 week period. He testified that the parties' agreement was that when the business had a cash flow, he would start taking a salary.

{¶28} Moreover, at the March 10, 2016 trial, appellant Rana testified that he did not expect appellee Gill to work for free and that, in his mind, he reached an agreement to pay appellee Gill $40,000.00 a year. Thus, there was testimony that appellant Rana expected to pay appellee Gill for his services during the 40 week period and that he benefitted from the services that appellee Gill provided.

{¶29} Based on the foregoing, we find that the trial court did not err in finding that appellee Gill did not waive his right to be compensated for the period in question. There was competent credible evidence supporting the trial court's decision.

{¶30} Appellants' first assignment of error is, therefore, overruled.

II

{¶31} Appellants, in their second assignment of error, contend that the trial court erred in awarding damages to appellee Gill in the amount of $40,000.00. Appellants argue that the trial court's decision was against the manifest weight of the evidence and that the reasonable value of appellee Gill's services to appellants was not $1,000.00 a week as found by the trial court. We disagree.

{¶32} At the trial on damages, appellant Rana testified that, prior to appellee Gill starting working at the business, they agreed that appellee Gill would be paid $3,300.00 a month, or $40,000.00 per year. He testified that he later agreed with appellant Gill receiving $1,000.00 a week for his services managing the business because "he's like compensating for that unpaid amount." Transcript of June 3, 2016 trial at 13. Appellee Gill received a salary of $1,000.00 a week from November 10, 2010 until he was injured in an automobile accident in March 10, 2011 without any objection from appellant Rana. At the damages trial, appellee Gill denied that there was ever an agreement that, if he was paid

$1,000.00 a week, it would compensate him for the first 40 weeks that he worked at the business.

**{¶33}** We concur with appellees that the factual evidence and appellant Rana's own testimony provide a reasonable basis for the trial court's award of $1,000.00 per week, or $40,000.00, to compensate appellee Gill.

**{¶34}** Appellants' second assignment of error is, therefore, overruled.

**{¶35}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, J. concur.